D&vis, Judge,

delivered the opinion of the court:
By the Federal Salary Reform Act of 1962 (Part II of the Act of October 11, 1962, Public Law 87-793), 76 Stat. 832, 841, 847, § 701(a) (B), 5 U.S.C. §1121, Congress changed the traditional criterion for step in-grade raises within the civilian federal service from “a current performance rating of ‘Satisfactory’ or better” to “work [which] is of an acceptable level of competence as determined by the head of the *412 department.” Plaintiff, who was denied an in-grade increase for the period ending June 23,1963 because it was said that he did not meet this new condition, sues for the advance on the ground that it was illegally withheld. Most of the relevant facts have been stipulated, all are undisputed, and both parties move for summary judgment.
Mr. Creamer, a lawyer, served as a federal employee almost continuously from 1984 until he retired at the end of December 1964. From May 1946, he was an attorney-adviser, or consultant, with the Veterans Administration’s Board of Veterans Appeals. It was his duty to draft proposed decisions for the Board on the various types of claims for veterans benefits which come before that busy tribunal. In 1962-1963, he held a GS-13 grade; during that year, the Board had almost fifty attorneys (called consultants) in that same grade. Mr. Creamer had, at all relevant times, an annual performance rating of “Satisfactory” or better, issued by the Board under the Performance Eating Act of 1950, 5 U.S.C. ■§§ 2001, et seq (1964 ed.). His period for an in-grade pay increase, if one was to be given, ended on June 23,1963, and apparently covered the prior year. A determination was made that his work for those months was not “of an acceptable level of competence.” The complaint is that, for several reasons, this finding was not legally made or effective, and that plaintiff is therefore entitled to the increase as a matter of law.
1. The first attack is on the validity of the performance evaluation plan used by the Board of Veterans Appeals to judge plaintiff’s competence. For some time before June 1963 the Board had utilized, and made known to its consultants, rather elaborate “work measurement and performance standards” which gave numerical grades for the quantity of the employee’s “production” and the quality of this “production”, as well as for overall performance. This gauge was one of the prime measuring devices used in appraising plaintiff’s work. He says that this was wholly improper because the plan was never submitted to or approved by the Civil Service Commission, as required (in plaintiff’s view) by the Performance Eating Act of 1950. That statute directs the various federal agencies to “establish and use one or more performance-rating plans for evaluating *413 the work performance” of their officers and employees (5 U.S.C. § 2002) ; prohibits the giving of “a performance rating, regardless of the name given to such rating” or the using of any such rating “as a basis for any action, except under a performance-rating plan approved by the Civil Service Commission as conforming with the requirements” of the Act (5 U.S.C. § 2003) ; and specifies the nature and content of acceptable performance-rating plans (5 U.S.C. §§2004-2005).
The worm in plaintiff’s position is that these sections of the Performance Eating Act have nothing to do with plans or guidelines which may be used for determining an employee’s “acceptable level of competence” under the Federal Salary Eeform Act of 1962.[1] The Performance Eating Act applies to regular performance ratings, in the sense those have long been known throughout the Federal Government — the recurrent ratings which can lead to separation, reassignment, or demotion. In that piece of legislation Congress was dealing with that precise subject, and with personnel actions which are tied to such performance ratings, like in-grade raises prior to the 1962 Act. But Congress was not laying down general rules for all managerial evaluations of Federal employees for any purpose. Certainly, for one thing, appraisals to determine promotions from one grade to another are not covered; nor is the granting of incentive awards or special honors. In 1962, Congress clearly abandoned, for in-grade raises, any connection with annual performance ratings. The old measure of “a current performance rating of ‘Satisfactory’ or better” (emphasis added) was deliberately dropped, and a new standard substituted which was wholly outside the structure of the Performance Eating Act (and its gradings of “outstanding”, “satisfactory”, and “unsatisfactory”). With the cutting of the connection to the Performance Eating Act, the definitions and requirements of that statute no longer had an impact on in-grade advances. As utilized in that area, the measurement standards of the Board of Veterans Appeals did not comprise a “perform *414 ance-rating plan” within the 1950 Act, but, rather, independent criteria with another aim.
This court has several times rejected claims that one provision or another of the Performance Hating Act controls federal personnel action under an independent statute. Misuraca v. United States, 185 Ct. Cl. 387, 394 (1956); De Busk v. United States, 132 Ct. Cl. 790, 796-97 (1955), cert. denied, 350 U.S. 988 (1956); Athinson v. United States, 144 Ct. Cl. 585, 596-98 (1959); Chisholm v. United States, 149 Ct. Cl. 8, 11-13 (1960); Allen v. United States, 155 Ct. Cl. 598, 600 (1961); Begendorf v. United States, 169 Ct. Cl. 293, 297, 340 F. 2d 362, 365 (1965). The present case is another instance in which that Act, if confined to its proper scope, must be held irrelevant to a transaction and proceeding governed by separate legislation.
2. Plaintiff’s second assault on the denial of the increase is that he was deprived of his right under Section 14 of the Veterans’ Preference Act, 5 U.S.C. § 863 (1964 ed.), to a 30-day notice. The argument is in three steps (each of which defendant disputes): (a) under the 1962 Act, the Civil Service Commission regulations, and the Veterans Administration’s own regulations, plaintiff automatically became entitled to the in-grade raise at the end of the period (June 23, 1963) unless he was properly notified in writing, before that time, that he was not to receive the benefit,’ (b) he did not receive such written notification until June 26, 1963 — three days too late; and (c) it follows that, when he was belatedly notified of the denial on June 26th, the agency’s action was equivalent to a reduction in his then compensation (which had already jumped on June 23rd), and under Section 14 of the Preference Act he should have been granted at least 30 days advance written notice before the reduction could become effective.
We do not test the sting of the first and third' prongs of this argument, because we think that plaintiff obtained adequate notice prior to June 23rd.[2] There was substantial compliance *415 both with the Commission’s general directive on notice,[3] and with the employing agency’s regulations specifically demanding notice prior to the end of the in-grade period.[4] According to an unchallenged affidavit of plaintiff’s supervisor: (i) Mr. Creamer was informed, at the end of each calendar quarter, of his standing as measured by the Board’s perform anee criteria and was told weekly of the recorded amount of his “production”; (ii) the supervisor personally discussed with plaintiff, in June, August, September, and December 1962, and at other times, the fact that he was not performing up to the standard expected of attorneys of his grade; (iii) in August 1962, a high official of the Board advised plaintiff by written memorandum that his work was below acceptable standards (as well as indicating specific ways in which he was deficient); and (iv), for the quarter ending March 31,1963, plaintiff was given a written report showing that he was below average in production, quality, and overall efficiency, and was orally advised that these facts raised a strong presumption that a regular in-grade salary increase was not warranted. We consider this course of conduct during the critical year, especially the written report as *416 of March 31, 1963, to be adequate satisfaction of the Veterans Administration’s internal requirement that “the notification shall be given prior to the date on which the time-in-grade requirements for within-grade step increase will be met [i.e. June 23,1963].” See Borak v. Biddle, 141 F. 2d 278, 281 (C.A.D.C. 1944), cert. denied, 323 U.S. 738. All the major objectives of this notice-provision were fulfilled by the agency’s communications in 1962 and 1963, written and oral, to plaintiff; he must have known that, unless his work improved markedly, he would not be given a step increase. The delayed notice of June 26th can therefore be disregarded as out of time, and still the agency-regulation’s insistence on a pre-June 23rd notification was accomplished.[5]
3. Plaintiff urges, also, that his supervisors acted arbitrarily and capriciously in evaluating his level of competence. At the time of their determination, there was no review by the Civil Service Commission of such denials.[6] We must therefore pass on the claim of arbitrariness without the benefit of Commission assessment. We start, however, with the premise that the employing agency had considerable leeway in deciding whether an employee had reached and maintained “an acceptable level of competence.” This is indicated, first of all, by the words Congress used — “acceptable” necessarily implies discretion and choice; a judgment of “competence” plainly invokes evaluation, appraisal, and assessment; “as determined by the head of the department” shows that no mechanical or automatic standard was being imposed by this statute, as had been the case under the prior law when a performance-rating of “Satisfactory” was all-sufficient. Next, the legislative history suggests that Congress sought, throughout the 1962 Act, to construct a pay system which provided for “executive discretion to meet individual and special needs, to use pay for motivating employees, and to initiate general adjustments as required.” See “Statement of Purpose and Justification and Section-by- *417 Section Analysis of the Legislation Requested by the President of the United States to Reform the Major Federal Statutory Salary Systems”, Committee on Post Office and Civil Service, House of Representatives, February 28, 1962 [Committee Print], p. 1. See, also, S. Rept. No. 2120, 87th Cong., 2d Sess., p. 24 (1962). The President’s Executive Order No. 11073,28 Fed. Reg. 203,205 (1963), implementing the new in-grade provision, told the Civil Service Commission “to insure that only those employees whose work is of an acceptable level of competence receive step-increases * * *” (emphasis added). The commission’s regulation, 5 C.R.F. § 531.407(a), follows this wording and places the determination in “the head of the department, or a person authorized to act on his behalf.” All this adds up to a large grant of discretion to the department head and his delegates. Mishandled discretion can, of course, be set aside (see, e.g., Gadsden v. United States, 111 Ct. Cl. 487, 490, 78 F. Supp. 126, 127-28 (1948)), but the court should not be quick to find an abuse.
In setting out the deficiencies he sees, plaintiff contends that the agency’s discretion was exceeded by the mere use of the numerical “Work Measurement and Performance Standards” issued by the Board of Veterans Appeals. Our view differs. As we have already held, those guidelines did not have to be presented to or approved by the Civil Service Commission. In itself, the use of such measuring devices cannot be called arbitrary; though many professionals decry statistical tallies of work-production and work-quality, there are others (including the Judicial Conference of the United States, in some respects) who hold them appropriate even for adjudicators. A choice either way lies within the realm of responsible opinion. It is also said that the Board’s work-measurement standards were defective because they were not conclusive but merely created a “strong presumption” of eligibility or non-eligibility for the in-grade increase, leaving it to the supervisory officials to take account of other factors (many specified in the Board’s regulation) as warranted.[7] Again, adoption *418 of this “open-ended” aspect of the work measurement plan was witbin the agency’s jurisdiction under the 1962 Act; it has long been the rule that, where administrative discretion is to be exercised, proper place can be made for relevant individual circumstances; rigid formulas, to be strictly followed, need not be established. Of. Securities and Exchange Comm. v. Chenery Corp., 832 U.S. 194, 201-03 (1947). The 'Civil Service Commission recognizes that specific work standards are not conclusive, although they control “ordinarily.” Federal Personnel Manual, Chap. 431, Section 4-9.
Two more-limited charges of capriciousness are advanced. One is that, while plaintiff was denied an in-grade increase in June 1963, he was granted one in July 1964 even though his numerical ratings, according to the Board’s guidelines, were lower (at least no better) .[3] This showing does not persuade us that the agency was arbitrary. As plaintiff himself points out, and we have just discussed, the numerical scores were not definitive. The record shows, without dispute, that in 1962-1963 plaintiff’s supervisors felt strongly both that he intended “to do only enough to get by” (because of his feeling that he had been mistreated by management) and that he could easily come up to the proper standards if he desired. Moreover, his overall efficiency index for May 1963 — not cited by plaintiff, but relevant because it was immediately prior *419 to tibe end of the in-grade period — was only 59.3 (with a production index of 31.6), far below the Board’s standard of acceptability. These factors, which are not indicated to have existed in 1964, are enough to acquit the plaintiff’s supervisors of arbitrariness in 1963.
The other specific claim is that plaintiff was deprived of his increase while a few other Board attorney-consultants with similar or lower scores received theirs. Here, too, plaintiff forgets that the agency could properly consider elements other than the numerical indices. The Board’s written report on the performance scores of its legal consultants, as well as other documents in the record, show, so far as we can tell, that the supervisors had rational reasons for granting step raises to the others with low statistical ratings.[9] At the least, plaintiff has not demonstrated that the distinctions the Board drew were irrational or baseless.
4. The plaintiff’s final challenge, to the constitutionality of the in-grade step increase section of the ,1962 Act, must likewise be rejected. In the light of the Act’s legislative history, the prior experience of the agencies of the Federal Government in evaluating their personnel, and the latitude given to the Federal Government as employer, we must hold that “an acceptable level of competence” is a valid, not unduly general, standard to apply in deciding who should have in-grade raises. Cf. Fahey v. Mallonee, 332 U.S. 245, 249-53 (1947); Lichter v. United States, 334 U.S. 742, 784-86 (1948); Cafeteria Workers v. McElroy, 367 U.S. 886, 896-97 (1961). Plaintiff also contends that he was deprived of property without due process because the Board of Veterans Appeals acted improperly and arbitrarily toward him. Since we have held that this was not so, the constitutional claim falls, too.
Plaintiff’s motion for summary judgment is denied and defendant’s motion is granted. Plaintiff is not entitled to recover and his petition is dismissed.

 If the Performance Rating Act is inapplicable, there was clearly no requirement that such plan or guidelines be presented to or approved by the Civil Service Commission. Neither the 1962 Act, the Executive Order or the Commission’s regulations on in-grade increases under that statute imposed that requirement.

 Plaintiff appears to concede — correctly so — that If he received proper prior notice he has no claim that his salary was illegally reduced (i.e., without the 30-day notice required by Section 14 of the Veterans’ Preference Act) though he may have been denied pay to which he was entitled on other grounds.

 Tile Commission regulation, ¡5 C.F.R. § 831.407(b) (1964), directs that whenever the agency determines that the employee’s work is not of an acceptable level of competence the employee should receive “A prompt, written notice of that determination.”

 Veterans Administration Interim Issue 5-169, dated Oct. 18, 1962, provided in pertinent part: "Notifications to employees. Specific notification, to employees whose work is considered to be of an acceptable level of competence is not required. Employees on whom a determination is made that performance is not of an acceptable level of competence must be so notified in writing. Except for those determinations required with respect to an effective date of October 14, 1962, by reason of the provisions of the Federal Salary Reform Act of 1962, the notification shall be given prior to the date on which the time-in-grade requirements for within-grade step increase will be met. This notification shall be signed by the supervisor making the original determination and the higher-level supervisor having responsibility for confirming such unfavorable determinations. The notification shall include:
“a. Reasons for the determination, including specific areas in which the employee’s performance has been less than competent. (Note: Where the determination is based on a pending 90-day warning of unsatisfactory performance or a written notice of intent to demote or remove for cause, reference to such fact will suffice.)
“6. The date, within the next 52 calendar weeks, by which a new determination will be made.
“o. The employee’s right upon written request within 10 days of his receipt of the notification, to seek reconsideration of the determination. Information about how to initiate such reconsideration also should be included.
"d. A statement that a copy of the notification will be placed in the employee’s official personnel folder.” [Emphasis in original.]

 The Commission’s more general directive of a “prompt written notice” (see fn. 3, supra) was satisfied by the formal notice of June 26th, together with the prior communications.

 Congress has since provided for Commission review. Section 3 of the Federal Employees Salary Act of 1965, Public Law 89-301, Act of October 29, 1965, 79 Stat. 1111, 5 U.S.C. 1121(c). See S. Rept. No. 910, 89th Cong., 1st Sess., p. 5 (1965) ; H. Rept. No. 792, 89th Cong., 1st Sess., pp. 6, 34 (1965).

 More generally, the Veterans Administration's overall regulation on in-grade increases (Interim Issue 5-169, Oct. 18, 1962) directed the use of performance on work standards, where established, “unless there is other contradictory evidence.”

 With respect to tie denial in June 1963, plaintiff cites tie following scores:

Tiougi not cited by plaintiff, tie record siows tie following for tie six-monti period from Jan. 1,1963 tirougi June 30, 196.3:

Witi respect to tie approval of an increase in July 1964, plaintiff cites tie following:

 Such as the subjective impressions of the supervisors, inexperience of the employee, marked progress by an employee, very good ratings prior to the particular evaluation period, unusual assignments, complexity of work.