**John STASKUS**

v.

**The UNITED STATES.**

**No. 10–76.**

United States Claims Court.

Dec. 10, 1982.

Leonard F. Lybarger, Cleveland, Ohio, for plaintiff.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

LYDON, Judge:

This civilian pay case comes before the court on plaintiff's motion and defendant's cross-motion for summary judgment. Both parties strongly assert that there is no genuine issue as to any material fact. The matter before the court centers on a decision by the Board of Appeals and Review (BAR) of the Civil Service Commission (CSC) upholding plaintiff's separation from Federal employment by the National Aeronautics and Space Administration (NASA) at its Lewis Research Center (LRC) in Cleveland, Ohio, pursuant to a reduction in force (RIF).

In the early seventies, as a result of a number of factors, including budgetary limitations and the need to realign NASA so as to meet changing program emphasis, NASA found itself in the position of having to embark on a large scale reduction of its personnel. Over 200 positions were earmarked for elimination at LRC. LRC carried out an initial RIF in the fall of 1970 and a subsequent RIF in the fall of 1971. As a result of retirements, resignations and other attrition factors only 81 employees at LRC were actually separated by the RIF that became effective on October 2, 1971.

By letter dated August 16, 1971, plaintiff was advised that LRC "had been directed to make a reduction in permanent Civil Service positions by October 2, 1971," and that his position, Aerospace Engineer (AST, Flight Systems), GS–861–13, was to be abolished effective October 2, 1971, as part of a reduction in force, which, the letter stated, had been previously announced. The letter went on to state that the RIF was "part of an overall manpower reduction throughout NASA required to achieve the proper size and composition of the work force for carrying out NASA programs." The letter also furnished information to plaintiff relevant to RIF rights and procedures.

Plaintiff appealed his separation to the CSC, Chicago Regional Office, claiming procedural violations in his RIF separation. That office, after a personal appearance by plaintiff and his attorney, sustained plaintiff's RIF separation. Plaintiff thereafter appealed to BAR which affirmed the decision of the Chicago Regional Office.

On March 8, 1976, plaintiff filed suit in the United States Court of Claims contending that the decision of BAR, upholding his RIF separation, was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and otherwise not in accordance with law.[1] Proceedings in this case, at the request of the parties, were suspended awaiting decisions in two companion cases which involved similar attacks on the procedural validity of RIF separations at LRC. It was felt that decisions in these cases would be applicable to some degree in the disposition of this case. In the first case, involving an October 2, 1971, RIF separation of a Nuclear Engineer GS–840–12, at LRC, the Court of Claims upheld the decision of BAR that the separation was proper and lawful, rejecting in essence ma-

---

1. This case, on plaintiff's motion, was transferred to the Court of Claims, pursuant to 28 U.S.C. § 1406(c), by order of the United States District Court, Northern District of Ohio, Eastern Division, on January 7, 1976.

jor contentions advanced by plaintiff in this case. *Alexander v. United States,* 546 F.2d 431, 211 Ct.Cl. 368 (1976).[2] In the second case, involving a September 30, 1970, RIF separation of a physicist GS–1301–1–11 at LRC, a district court upheld the decision of the CSC that the separation was proper and lawful, rejecting, *inter alia,* the contention that NASA's single position competitive level was improperly narrow and restrictive, *Partridge v. United States,* No. C79–758 (N.D.Ohio, Nov. 25, 1981), *appeal docketed,* No. 82–3254 (6th Cir. Apr. 27, 1982).[3] Subsequent to the rendition of the *Alexander* and *Partridge* decisions, plaintiff advised that these decisions were not deemed controlling in this case. Thereafter, the trial judge, deeming the prior suspensions to have been improvidently issued, lifted the suspensions and directed plaintiff to proceed with the litigation.

■■■ It is settled that judicial review of administrative actions in the civilian pay area generally is limited. *Wathen v. United States,* 208 Ct.Cl. 342, 351–52, 527 F.2d 1191, 1197 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). The court will not sit as "a super Civil Service Commission." *Sexton v. Kennedy,* 523 F.2d 1311, 1314 (6th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796, *rehearings denied,* 429 U.S. 873, 97 S.Ct. 192, 50 L.Ed.2d 156 (1976), 439 U.S. 1104, 99 S.Ct. 886, 59 L.Ed.2d 66 (1979). In RIF cases, judicial review of administrative decisions is particularly narrow as noted by the Court of Claims in *Friedman v. United States,* 214 Ct.Cl. 804, 805–06 (1977) in pertinent part as follows:

"Our review of a reduction in force is limited, and it is only where an error

'going to the heart of the administrative determination' is committed that we can grant relief. *Barger v. United States,* 170 Ct.Cl. 207, 214 (1965)." *Carlson v. United States, ante,* [214 Ct.Cl.] at 774. The Civil Service Commission and the agencies undertaking to apply the Commission's standards are accorded wide discretion in conducting a RIF program. *Wilmot v. United States,* 205 Ct.Cl. 666, 686 (1974); *Bookman v. United States,* 197 Ct.Cl. 108, 453 F.2d 1263 (1972), and absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, the administrative decisions is final. *Barger v. United States, supra.* Plaintiffs ask us to view the facts of their cases as a whole to ascertain violations of their rights, recognizing as they must their heavy burden in attempting to overcome the broad RIF authority of the agency and the Commission in light of the limited scope of this court's review.

There is a presumption that administrative actions are taken in good faith. *Wathen v. United States, supra,* 208 Ct.Cl. at 352, 527 F.2d at 1197; *Boyle v. United States,* 207 Ct.Cl. 27, 47, 515 F.2d 1397, 1401 (1975).

Given the review standards set forth above, the decision by BAR that plaintiff's RIF separation was procedurally correct, in accord with all applicable regulations, and did not violate any of plaintiff's separation rights, must be sustained.

Plaintiff claims that the failure of the CSC to hold an evidentiary or adversary hearing on his RIF separation violated the due process clause of the fifth amendment to the constitution and thus rendered the

---

2. In his brief, plaintiff directed the court to the brief filed by counsel in the *Alexander* case (Ct.Cl. No. 328–74) for a detailed history of the 1971 RIF at LRC. The *Alexander* brief clearly shows the similarity of the plaintiff's arguments in this case and the arguments made in the *Alexander* case. It is noted that counsel for plaintiff in this case also represented the plaintiff in the *Alexander* case.

3. The district court had previously issued another decision in the *Partridge* case in which the court rejected the argument that the RIF regulations were facially unconstitutional because they failed to provide for an evidentiary hearing and thus were violative of due process of law. *Partridge v. Fletcher,* No. C72–831 (N.D.Ohio Sept. 9, 1974). It is noted that counsel for plaintiff in this case also represents the plaintiff in the *Partridge* case.

CSC decision under review defective and void.[4]

It has been held that the due process clause of the fifth amendment does not require that evidentiary or adversary hearings be granted as a matter of right in connection with RIF separations. *Partridge v. Fletcher,* No. C72–831 (N.D.Ohio Sept. 9, 1974). It is conceded, as it must be, that applicable statutory and regulatory provisions, as well as case law, do not require an evidentiary or adversary hearing relative to a RIF separation. *Miatech v. United States,* 213 Ct.Cl. 688, 689 (1977); *Rasmussen v. United States,* 211 Ct.Cl. 260, 267, 543 F.2d 134, 137 (1976); *Alexander v. United States, supra,* 546 F.2d 431, 211 Ct.Cl. at 369.

There is, however, case law which holds that if a RIF separation is, in fact, a disguised adverse action, then plaintiff, under adverse action statutory and regulatory provisions, would be entitled to an evidentiary or adversary type hearing. *Fitzgerald v. Hampton,* 467 F.2d 755, 758–60 (D.C.Cir. 1972), *stay granted,* 409 U.S. 1055, 93 S.Ct. 549, 34 L.Ed.2d 509 (1972), *stay dissolved,* 409 U.S. 1100, 93 S.Ct. 888, 34 L.Ed.2d 682 (1973), *aff'd.* 509 F.2d 537 (D.C.Cir.1975). *See also Ritter v. Strauss,* 261 F.2d 767 (D.C.Cir.1958); *Kelly v. United States,* 133 Ct.Cl. 571, 138 F.Supp. 244 (1964) which hold that RIF's must be conducted in good faith.

■ Plaintiff relies on the above-cited cases in support of his position. However, plaintiff's RIF situation just does not fit into the mold of the RIF situations present in those cases. For example, in *Fitzgerald v. Hampton, supra,* the RIF separated employee appealed to the CSC contending he was in fact separated in retaliation for testimony he gave before a congressional committee on cost overruns. The CSC granted a hearing in that case, on the basis of said allegations, but refused to hold an "open to the public and press" hearing, a ruling the circuit court set aside. If plaintiff in this RIF separation case is deemed entitled to an adverse hearing, it would be tantamount to a holding that any employee separated by a RIF would be entitled to an adverse hearing merely by alleging deficiencies in the RIF process. This is not the holding of any case, including *Fitzgerald v. Hampton, supra,* 467 F.2d at 760.

■ The question to be answered is whether the 1971 RIF at LRC was conducted in bad faith or was used as a disguised adverse action to get rid of plaintiff. On the basis of the materials before the court it is concluded that the 1971 RIF at LRC was *bona fide* in all respects and was not used as a pretext to get rid of plaintiff. The 1971 RIF involved some 81 separations and was part of a large scale agency reorganization and manpower reduction. In carrying out the RIF, there is no evidence that it was manipulated so as to insure plaintiff's separation. Rather, the RIF was routinely processed in accordance with applicable regulations. Moreover, in his appeal to BAR, plaintiff, while he criticized the RIF process, never claimed that the RIF was merely an excuse to get rid of him, and BAR, in its decision, had no occasion to rule specifically on the matter in its March 14, 1973, decision. Had plaintiff raised such contentions in his appeal to the CSC, the CSC may have ordered a hearing as it did in the *Fitzgerald* case. This failure to raise such an issue in a manner that would enable BAR to consider it serves to explain BAR's failure to address

---

4. There is no support in the record before the court for plaintiff's argument that the CSC placed the burden on plaintiff to show that the NASA RIF was improperly motivated. NASA carried its burden of establishing that the RIF at LRC was legal and proper. NASA's reorganization efforts were *bona fide* and were not a pretext to get rid of plaintiff. Thus, *Losure v. Interstate Commerce Commission,* 2 MSPB 361 (1980), relied on by plaintiff, is inapposite. "Reorganization (including the creation and abolition of jobs) as a means of improving the public's business is peculiarly within the authority and discretion of agency heads and supervisory officials." *Keener v. United States,* 165 Ct.Cl. 334, 341 (1964). The validity of the NASA RIF at LRC has already passed judicial muster in *Alexander v. United States,* 546 F.2d 431, 211 Ct.Cl. 368 (1976) and *Partridge v. United States,* No. C79–758 (N.D.Ohio Nov. 25, 1981), *appeal docketed,* No. 82–3254 (6th Cir. Apr. 8, 1982).

the matter.[5] *See Miatech v. United States, supra,* 213 Ct.Cl. at 689. A similar argument was leveled at the 1971 RIF at LRC in *Alexander v. United States, supra,* 211 Ct.Cl. at 369, wherein plaintiff failed to convince the court that his RIF separation was in fact a disguised adverse action. Plaintiff has likewise failed herein to convince the court that his RIF separation was a disguised adverse action. *See also Partridge v. Fletcher, supra,* No. C72–831 (N.D. Ohio Sept. 9, 1974).

Plaintiff next claims that the CSC erred in failing to find that his position, in reality, was not abolished as a result of the RIF at LRC. This matter was given careful consideration by BAR and its finding that plaintiff's position was abolished at the time of the RIF and that the reassignment of a non-veteran to his former branch after plaintiff's separation did not violate his retention rights is supported by substantial evidence and is otherwise correct. An agency is not precluded from making reassignments after a RIF, and there is no indication, much less any evidence, that the reassignment in question was tainted or otherwise improper. *Cf. Smith v. United States,* 151 Ct.Cl. 205 (1960). There is no basis on which to overturn the CSC on this matter. *See Wilmot v. United States,* 205 Ct.Cl. 666, 682 (1974).[6]

In a RIF proceeding, an employee may be entitled to "bump" (replace) another employee, and thus not be separated, if the first employee can meet the minimum qualifications for the job held by the second employee and is able "to satisfactorily perform the duties and responsibilities of the position *without undue interruption* to the activity." 5 C.F.R. § 351.701 (1971). Plaintiff claims the CSC's regulatory language "without undue interruption to the activity" was unconstitutionally vague and unfairly applied relative to his RIF separation.

In the area of "bumping," courts are most reluctant to enter this field of administration. It has been held, "[i]t is the job of the agency to decide what reassignment would unduly interrupt the work program * * *." These administrative decisions will not be lightly set aside. *Wilmot v. United States, supra,* 205 Ct.Cl. at 686. Matters

**5.** In his appeal to BAR, plaintiff did complain that his personal appearance before the Chicago Regional Office was not meaningful. In its decision BAR noted that the procedures governing a personal appearance were within the discretion of the CSC Regional Office and further stated it found no impropriety in the procedures followed by the Regional Office in conducting plaintiff's personal appearance. The record supports this finding. *See Alexander v. United States,* 211 Ct.Cl. 368, 369 (1976). Since this case is not an adverse action case, and the right to a hearing, personal or otherwise, was not mandated at times material herein by statute or regulation, but was a matter of CSC discretion, the case of *Ricucci v. United States,* 192 Ct.Cl. 1, 425 F.2d 1252 (1970), relied on by plaintiff in support of his contention that the manner in which his personal appearance was conducted violated due process, is inapposite. It is to be noted that the CSC did not use the word "hearing." It granted plaintiff, at his request for "a hearing in person," an opportunity for a "personal appearance" before the Chicago Regional Office and directed plaintiff to contact that office concerning any "appearance" arrangements.

**6.** The CSC, in its consideration of this matter, sought an advisory opinion from the Career Service Division of the CSC relative to plain-

tiff's qualifications for a number of positions and the contention by plaintiff that his position had not been abolished. This advisory opinion was based on documentation previously available to plaintiff, *e.g.,* position descriptions and a letter to CSC from LRC Personnel Director. Plaintiff claims that the CSC improperly considered those portions of the advisory opinion unfavorable to him while disregarding those portions of the advisory opinion favorable to him. There was no due process violation in the CSC seeking advice from one of its divisions. This is an example of permissible institutional decision-making. *Della Valle v. United States,* Ct.Cl. No. 300–80C (order entered on July 16, 1982, p. 5). *See Guido v. United States,* 213 Ct.Cl. 686, 687 (1977); *Roski v. United States,* 204 Ct.Cl. 40, 50 (1974). *See also Morgan v. United States,* 298 U.S. 468, 481, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936). Further, there is a presumption that the CSC acted in good faith in asking for and utilizing this advisory opinion, weighing its contents, pro and con, and giving it the consideration it deemed warranted in light of all the materials before it. *See Wathen, v. United States, supra,* 208 Ct.Cl. at 351–52, 527 F.2d at 1197, *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). This presumption stands unrebutted on this record.

relating to an employee's qualifications for an agency position, particularly are functions more properly for agency consideration and decision rather than judicial determination. *Bookman v. United States,* 197 Ct.Cl. 108, 116, 453 F.2d 1263, 1267 (1972). *See also Barger v. United States,* 170 Ct.Cl. 207, 214 (1965). The presumption is that CSC officials act in good faith in making such decisions. *Grover v. United States,* 200 Ct.Cl. 337, 343 (1973). In *Alexander v. United States, supra,* the Court of Claims rejected arguments, strikingly similar to those raised in this case, attacking the bumping procedures and process utilized in the October 2, 1971, RIF which also separated plaintiff. (211 Ct.Cl. at 369).

■ Upon careful review of the record, it is concluded that the decision of the CSC dealing with plaintiff's "bumping" rights reflected a proper exercise of discretion, is supported by substantial evidence and is not otherwise contrary to law or regulation. Plaintiff has failed to carry its burden of showing the contrary. See *Albert v. United States,* 194 Ct.Cl. 95, 100, 437 F.2d 976, 979 (1971). Accordingly, that decision will not be disputed.

■ Plaintiff's argument that the language "without undue interruption * * * *" is vague, uncertain and unconstitutional lacks merit.[7] The language in question necessarily implies discretion and choice, factors inherent in the administrative judgment and expertise necessary relative to work assignments. *Wilmot v. United States, supra,* 205 Ct.Cl. at 686. The Court of Claims "has consistently held that it is the job of the agency to decided [sic] what assignments would unduly interrupt its work program. *Alexander v. United*

*States, supra,* 546 F.2d 431, 211 Ct.Cl. at 369.[8]

More importantly, comparable general language which underscores other federal personnel actions has withstood the constitutional challenge of being unduly vague and uncertain. See *Arnett v. Kennedy,* 416 U.S. 134, 161–64, 94 S.Ct. 1633, 1647–1649, 40 L.Ed.2d 15 (1971) and *Hoover v. United States,* 206 Ct.Cl. 640, 646, 513 F.2d 603, 606 (1975) ["efficiency of the service"]; and *Ruderer v. United States,* 188 Ct.Cl. 456, 459–60, 412 F.2d 1285, 1287–88 (1969), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970) and *Creamer v. United States,* 174 Ct.Cl. 408, 416, *cert. denied,* 385 U.S. 819, 87 S.Ct. 42, 17 L.Ed.2d 57 (1966) ["acceptable level of competence"]. The language "without undue interruption" is also deemed an acceptable general standard indicating choice, discretion and evaluation which adds up to the vesting of a large grant of discretion agency officials who have expertise to handle the difficult but vital job of administering the operation of agency functions through personnel reassignments. The agency did not abuse its discretion in determining that plaintiff could not perform the function of certain positions without undue interruption to its work program.

■ In his brief, plaintiff argues that the CSC erroneously concluded it had no authority to review plaintiff's allegation that the agency's recruitment of new employees negated the need for the RIF. Plaintiff's argument is based on an out-of-context reading of the BAR decision. As a result, a more detailed statement of the matter is in order.

---

7. The CSC upheld the agency determination that plaintiff could not perform, without undue interruption of the work, the duties of six employees whom plaintiff claimed he had a right to "bump."

8. The vagueness plaintiff complains of is the absence in the regulation of a "particular and specific period of time which would *not* be deemed to be "undue." However, "undue" is merely one aspect of the agency's discretion to respond to situations and circumstances which

cannot and should not be reduced to a mechanical or automatic standard at peril of destroying the very discretion on which personnel administration necessarily operates and functions. See *Ruderer v. United States,* 188 Ct.Cl. 456, 460, 412 F.2d 1285, 1287 (1969), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970); *Creamer v. United States,* 174 Ct.Cl. 408, 416, *cert. denied,* 385 U.S. 819, 87 S.Ct. 42, 17 L.Ed.2d 57 (1966).

At his personal appearance, which was recorded, plaintiff alleged, *inter alia,* that LRC had been engaged in recruiting activity during the RIF period which, plaintiff suggested, was in conflict with the directive to LRC to reduce personnel. The addition of new employees, plaintiff charged, negated any need to abolish his job and thus separate an experienced employee like himself. In its decisional letter of June 7, 1972, the Chicago Regional Office responded to the above allegation by advising, "[t]here is nothing necessarily amiss when an agency is recruiting for employees with special skills and simultaneously is reducing its force of employees having other skills." The Regional Office did not find this allegation subject to review as part of the adjudication of plaintiff's appeal ostensibly since it had not been shown to have any connection with the abolition of plaintiff's position. No evidence of any kind was offered in support of this allegation and no nexus asserted as to how this allegation, even if true, affected plaintiff's separation.

In his appeal to BAR, plaintiff did not specifically raise or renew the allegation that LRC had been engaged in recruiting activity during the RIF period. Instead, plaintiff asserted, *inter alia,* before BAR that the Regional Office failed to investigate the various allegations he had made, one of which was ostensibly the "recruiting activity" allegation. In response to this assertion, the BAR noted that in an appeal to the Commission, it was the responsibility of each party to present evidence in support of its contentions. BAR further noted that plaintiff was afforded an opportunity to submit any evidence he wanted to the Regional Office or BAR relative to all the contentions and allegations he raised. BAR found that the Regional Office considered all the evidence of record and properly disposed of all relevant issues raised by plaintiff. Other than plaintiff's naked allegation, there is no evidence in the record relating to recruiting activity at LRC during the RIF period. Plaintiff also contends, *inter alia,* that the position of another employee should have been abolished instead of plaintiff's position. In response to these two contentions the BAR decision stated:

Your contention that the position of the IB employee should have been abolished rather than yours is not a matter subject to appellate review by the Commission. Subchapter 1–2 of Chapter 351 of the FPM specifically states that "Only the agency can decide what positions are required, where they are to be located, and when they are to be filled, abolished, or vacated." [*See Gibson v. United States,* 176 Ct.Cl. 102, 110 (1966).] Since such decisions are within the discretion of agency management, the Civil Service Commission does not have the appellate jurisdiction to review the wisdom of those decisions.

This same rationale applies to your fourth contention where you contended that employees were transferred into your former Division after the reduction in force and that this violated the rights of employees who had been separated and had not been offered assignment to other positions. After the effective date of a reduction in force, it may be necessary for an agency to reevaluate its manpower allocations for various programs, and to reassign personnel as it deems necessary. [*See Keener v. United States,* 165 Ct.Cl. 334, 341 (1964).] The Board will review contentions that personnel actions initiated after a reduction in force were used to deny employees of their reduction-in-force rights. This is the type of review which the Regional Office and the Board made concerning your allegation that your position had not been abolished. Your contention that the agency transferred additional personnel into your former Division after the reduction in force does not, however, present in itself an issue as to the bona fides of the reduction-in-force action that had taken place. Instead, the Board finds that the reassignment of personnel into your former Division, lacking any evidence to the contrary, was a valid personnel action which was within the discretion of the agency.

The above excerpt from BAR's detailed decision serves to place plaintiff's arguments

in proper context and shows it to be without merit.

Plaintiff, in the course of contesting his RIF separation, has asserted a barrage of complaints, procedural and otherwise, against NASA, the CSC and the totality of the administrative proceedings. In its decision, the CSC attempted to meet and dispose of all of these complaints and charges. Plaintiff has failed to establish that the decision by BAR was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or contrary to law or regulation. Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

