**Lionel LEVINSON**

v.

**The UNITED STATES.**

**No. 435–74.**

United States Claims Court.

Dec. 20, 1982.

U.S. Court of Claims.

1. The plaintiff's pleading was filed as a petition under the rules of this court's predecessor, the

Leonard F. Lybarger, Cleveland, Ohio, for plaintiff.

M. Susan Burnett, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

LYDON, Judge:

This civilian pay case comes before the court on plaintiff's motion and defendant's cross-motion for summary judgment. Both parties assert that there is no genuine issue as to any material fact. The focal point of the matter at issue is a decision by the Board of Appeals and Review (BAR) of the Civil Service Commission (CSC) affirming a determination by the Commission's Chicago Regional Office that plaintiff's separation from the position of Aerospace Engineer (AST, Electrical Propulsion and Power), GS–13, in the Space Power System Division at the National Aeronautics and Space Administration (NASA), Lewis Research Center (LRC), Cleveland, Ohio, through application of reduction-in-force (RIF) procedures, was properly accomplished.

In the early seventies, as a result of a number of factors, including budgetary limitations and the need to realign NASA so as to meet changing program emphasis, NASA found itself in the position of having to embark on a large scale reduction of its personnel. Over 200 positions were earmarked for elimination at LRC. LRC carried out an initial RIF in the fall of 1970 and a subsequent RIF in the fall of 1971. Eighty-one (81) employees at LRC were separated by the RIF that became effective on October 2, 1971.

By letter dated August 16, 1971, plaintiff was advised that LRC had been directed to make a reduction in permanent Civil Service positions by October 2, 1971, "as part of

an overall manpower reduction throughout NASA required to achieve the proper size and composition of the work force for carrying out NASA programs." The letter notified plaintiff that his position was scheduled to be abolished as part of this reduction-in-force, and that he would, as a result, be separated from his position effective October 2, 1971. This letter furnished information to plaintiff relevant to RIF rights and procedures.

Plaintiff appealed his separation to the Chicago Regional Office, CSC, claiming procedural violations in his RIF separation. That office, after granting plaintiff and his attorney a hearing, non-adversary in nature, at which time plaintiff was given the opportunity to present evidence and argument in support of his contentions, sustained plaintiff's RIF separation. Plaintiff thereafter appealed to BAR which affirmed the decision of the Chicago Regional Office.

On December 18, 1974, plaintiff filed suit in the United States Court of Claims claiming that the decision of BAR, upholding his RIF separation, was arbitrary, capricious, an abuse of discretion, unconstitutional, unsupported by substantial evidence, and otherwise not in accordance with law. Proceedings in this case, at the request of the parties, were suspended to await decision in the case of *Alexander v. United States,* then pending in the United States Court of Claims. The parties advised, at that time, that issues similar to those involved in this case, were involved in the *Alexander* case and that some common issues were present in the *Alexander* case which would substantially effect this case.

In the *Alexander* case, the Court of Claims upheld the decision of BAR that the RIF separation of a Nuclear Engineer GS–12 at LRC on October 2, 1971, was lawful and proper, rejecting in essence major contentions advanced by plaintiff in this case. *Alexander v. United States,* 211 Ct.Cl. 368, 546 F.2d 431 (1976).[1]

■ It is settled that judicial review of administrative actions in the civilian pay area generally is limited. *Wathen v. United States,* 208 Ct.Cl. 342, 351–52, 527 F.2d 1191, 1197 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). The court will not sit as "a super Civil Service Commission." *Sexton v. Kennedy,* 523 F.2d 1311, 1314 (6th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796, *rehearings denied,* 429 U.S. 873, 97 S.Ct. 192, 50 L.Ed.2d 156 (1976), 439 U.S. 1104, 99 S.Ct. 886, 59 L.Ed.2d 66 (1979). In RIF cases, judicial review of administrative decisions is particularly narrow as noted by the Court of Claims in *Friedman v. United States,* 214 Ct.Cl. 804, 805–06 (1977) in pertinent part as follows:

'Our review of a reduction in force is limited, and it is only where an error "going to the heart of the administrative determination" is committed that we can grant relief. *Barger v. United States,* 170 Ct.Cl. 207, 214 (1965).' *Carlson v. United States, ante,* [214 Ct.Cl.] at 774. The Civil Service Commission and the agencies undertaking to apply the Commission's standards are accorded wide discretion in conducting a RIF program. *Wilmot v. United States,* 205 Ct.Cl. 666, 686 (1974); *Bookman v. United States,* 197 Ct.Cl. 108, 453 F.2d 1263 (1972), and absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, the administrative decisions is final. *Barger v. United States, supra.* Plaintiffs ask us to view the facts of their cases as a whole to ascertain violations of their rights, recognizing as they must their heavy burden in attempting to overcome the broad RIF authority of the agency and the Commission in light of the limited scope of this court's review.

There is a presumption that administrative actions are taken in good faith. *Wathen v.*

1. The pleadings and the arguments raised in the briefs in the *Alexander* case, which plaintiff describes as a "companion case," are, for the most part, strikingly similar to those raised in this case. In its moving brief in this case, plaintiff directs the court to his brief in the *Alexander* case for a detailed recital of the history of the 1971 RIF at LRC.

*United States, supra,* 208 Ct.Cl. at 352, 527 F.2d at 1197; *Boyle v. United States,* 207 Ct.Cl. 27, 47, 515 F.2d 1397, 1401 (1975).

Given the review standards set forth above, the decision by BAR that plaintiff's RIF separation was procedurally correct, in accord with all applicable regulations, and did not violate any of plaintiff's separation rights, must be sustained.

There have been a number of challenges to the propriety of the RIF at LRC. Some employees were separated as a result of a RIF in the fall of 1970. Some 81 individuals were separated as a result of the October 2, 1971, RIF. For the most part, the arguments raised by plaintiff in this case were raised in other cases in which employees separated as a result of a RIF at LRC contested their separations. These separations, upheld by BAR, successively passed the muster of judicial review. *See Alexander v. United States, supra; Partridge v. United States,* No. C79–758 (N.D.Ohio Nov. 25, 1981), *appeal docketed,* No. 82–3254 (6th Cir. Apr. 8, 1982); and *Staskus v. United States,* 1 Cl.Ct. 633 (1982) (Lydon, J.). Indeed, plaintiff's arguments in the *Staskus* case are repeated almost verbatim, with one exception to be discussed later, in the briefs plaintiff filed in this case. Accordingly, it is deemed unnecessary to reconsider them in detail herein. Instead, plaintiff's contentions and their disposition will be briefly synthesized hereinafter.

■ Plaintiff contends he was entitled to an adversary hearing and procedures. However, it is well settled that a full evidentiary hearing and adversary action procedures are not required in a RIF situation unless the RIF was, in fact, a disguised adverse action. *Alexander v. United States, supra,* 211 Ct.Cl. at 369, 546 F.2d 431; *Staskus v. United States, supra,* 1 Cl.Ct. at 636–37. There is no reliable

evidence in the record that plaintiff's separation was a disguised separation and BAR justifiably made no such finding.[2]

■ Plaintiff's argument that BAR improperly sought an advisory opinion relative to his right to "bump" other employees is without merit, *see Staskus v. United States, supra,* 1 Cl.Ct. at 638, n. 6, as is his argument that his "bumping" rights were violated. BAR fully considered this argument and the agency exhaustively examined plaintiff's "bumping" rights. Administrative actions in this area of personnel administration are presumed to be correct. *Alexander v. United States, supra,* 211 Ct.Cl. at 369, 546 F.2d 431; *Staskus v. United States, supra,* 1 Cl.Ct. at 638–39. That presumption stands unrebutted on this record.

■ Plaintiff next attacks CSC's language in its regulations that a displacing employee in a RIF must be able "to satisfactorily perform the duties and responsibilities of the position [from which he seeks to "bump" another employee] without undue interruption to the activity." See 5 C.F.R. § 351.701 (1971) (underscoring supplied). Plaintiff's argument that the underscored language, *supra,* is unconstitutionally vague and unfairly applied lacks merit. *See Staskus v. United States, supra,* 1 Cl.Ct. at 638–39.

In his appeal to the Chicago Regional Office, plaintiff complained about the establishment of competitive levels at LRC. He contended that these competitive levels were excessively restrictive and the RIF at LRC was "used as a vehicle in the removal of persons, more particularly this appellant * * *." The Regional Office in its decision, which was affirmed by BAR, responded to this contention in pertinent part as follows:

---

2. Plaintiff's assertion that the CSC erroneously placed the burden on plaintiff to show that the NASA RIF was improperly motivated is without any record support. *See Staskus v. United States,* 1 Cl.Ct. 637, n. 4, (Cl.Ct.1982). The personal hearing provided plaintiff was not mandated by statute, but was a matter of CSC discretion, and the manner in which this hearing was conducted did not violate due process. *See Staskus v. United States, supra,* 1 Cl.Ct. at 638, n. 5.

Although you contend that the competitive levels were extremely restrictive, there was no evidence or information offered that the competitive levels had not been established on the basis of valid distinctions in the skills and knowledge required to perform the work. In scientific research fields it is characteristic for positions descriptions to be closely allied to the capabilities, education, training experience and accomplishments of the position incumbent. Hence, the establishment of competitive levels on a very restrictive basis is justified. It follows that a professional whose position has been abolished, encounters extreme difficulty in fully and effectively displacing other professionals, who may have lower retention status and hold somewhat related competitive level positions. This results primarily from the fact that the man on the job has the total benefit of background, experience, education and training, job continuity and currency with all aspects of the position. The incumbent is abreast of daily advances and technology changes whereas one not directly involved is quickly outdated, requiring an inordinate period of time to become productive on the job.

 Administrative matters such as those involved in the establishment of competitive levels, the determination of the proper functions and responsibilities of a particular position, etc., are vested in the discretion of agency officials. Absent some blatant and arbitrary action by officials in this area of personnel management, courts will not interfere or set aside such actions and determinations. *See Bookman v. United States,* 197 Ct.Cl. 108, 116, 453 F.2d 1263, 1267 (1972); *Gibson v. United States,* 176 Ct.Cl. 102, 110 (1966); *Keener v. United States,* 165 Ct.Cl. 334, 341 (1964). Plaintiff's suggestion that LRC manipulated the establishment of competitive levels and position situations in order to get rid of plaintiff has no record support, inferential or otherwise. As indicated previously, public officials are presumed to act in good faith. *Wathen v. United States, supra; see Connolly v. United States,* 1 Cl.Ct. 312 at 319–320 (Cl.Ct.1982) (Kozinski, C.J.); *Alex-*

*ander v. United States, supra.* Plaintiff has failed to rebut this presumption in this regard.

The matter of restrictive competitive levels forms the basis for plaintiff's final argument in his attack on the CSC decision. This issue was not present in the *Alexander, Partridge* and *Staskus* cases discussed previously. By decision dated December 19, 1972, BAR affirmed the decision of the Chicago Regional Office of May 10, 1972, that plaintiff's RIF separation was proper in all respects. By letter dated November 22, 1974, almost 2 years after the BAR decision, plaintiff sought to have BAR reopen and reconsider its December 19, 1972, decision in plaintiff's case on the basis of new and material evidence. The new evidence plaintiff proffered in support of his request was a report prepared by the Dayton, Ohio, Area Office of the CSC for the Chicago Regional Office (Dayton Report). This Report was purportedly submitted to the Chicago Regional Office in February 1971. By letter dated February 5, 1975, the CSC advised plaintiff in pertinent part as follows:

> We have carefully considered the information submitted in support of the request to have your case reopened. We find that the information submitted does not constitute new material evidence not readily available at the time of the decisions of the Board of Appeals and Review which is sufficient to indicate error in any of the findings of the Board of Appeals and Review on the issues of your appeal. Therefore, in the absence of any such new material evidence or information which indicates that your competitive level was improperly constructed, or which indicates that you were denied a change in assignment to which you were entitled in the reduction-in-force, or which otherwise meets any of the above criteria for reopening a previous decision of the Board of Appeals and Review, the request to reopen your appeal must be denied.

 Plaintiff concedes, as he must, that it was discretionary with the CSC whether

to reopen and reconsider its past decision. The question here is whether the CSC abused its discretion in declining to reconsider its past decision. Giving due regard to the facts of record, it is concluded that the refusal of the CSC to reopen a case decided almost 2 years earlier was not an abuse of decision, nor was it arbitrary or capricious. *See Keeling v. United States,* 172 Ct.Cl. 246, 249, 252 (1965); *see also Gratehouse v. United States,* 206 Ct.Cl. 288, 298–99, 512 F.2d 1104, 1109 (1975); *Bookman v. United States, supra,* 197 Ct.Cl. at 112–13, 453 F.2d at 1265.[3]

The Dayton Report, which plaintiff considered to be new and material evidence, was not so considered by the CSC.[4] Plaintiff noted in his letter requesting reconsideration that the Report involved the 1970 RIF and not the 1971 RIF which separated him. Thus, its materiality was reasonably suspect from the start. But, plaintiff noted, in an effort to blunt the fact that different RIF periods were involved, the general conclusions of the Report suggested to plaintiff that LRC might have deliberately established narrow and restricted competitive levels to get rid of personnel. The materiality of the Dayton Report to plaintiff's position in 1971 is most probably lacking in view of the decision in *Partridge v. United States, supra,* sustaining a CSC 1970 RIF separation. In the *Partridge* case, the

District Court rejected the view, which plaintiff seeks to create in its briefs, that the Dayton Report created an inference that plaintiff's competitive level was overly narrow. Further, the District Court held that Partridge never demonstrated that the establishment of competitive levels at LRC was used to remove marginal employees, and further held that critical conclusions in the Dayton Report had not been linked through relevant evidence to Partridge's particular competitive level. It is most probable that similar conclusions would have been reached had the CSC reopened and reconsidered its prior decision, giving specific consideration to the Dayton Report. Accordingly, it is not unreasonable to conclude, based on the available record and past court decisions in which the Dayton Report was relied on by separated employees, that even if the CSC's refusal to reopen its prior decision is deemed, *arguendo,* to have been improvident, it was, at best, harmless error and thus provides no basis for relief in this case. *See Charley v. United States,* 208 Ct.Cl. 457, 472 (1975); *Cohen v. United States,* 177 Ct.Cl. 599, 618, 369 F.2d 976, 987–88 (1966).

Plaintiff had claimed at the start of his appeal from his RIF separation that his competitive level was narrow and restricted. This was the essence of the Dayton

---

**3.** The Dayton Report was a study of the appeals of six employees at LRC who had been separated by the 1970 RIF. The Report dealt with the question of whether the competitive levels established by LRC were so restrictive and narrow as to be improper. In *Partridge v. United States,* No. C79–758 (N.D.Ohio, Nov. 25, 1981), p. 23, *appeal docketed* No. 82–3254 (6th Cir. April 27, 1982) the District Court, after an evidentiary hearing before the CSC involving full consideration of the materiality and relevance of the Dayton Report on Partridge's 1970 RIF, upheld the CSC's decision that Partridge's separation was proper, noting that Partridge never demonstrated that the findings in the Dayton Report applied to his individual case and that the conclusions of the Dayton Report were never linked through relevant evidence to Partridge's particular competitive level. These findings are most significant when it is noted that Partridge was one of the six employees whose positions were studied for purposes of preparing the Dayton Report. Yet, the District Court upheld the CSC's determination that Par-

tridge's competitive level was not overly restrictive nor was it contrived so as to get rid of Partridge.

**4.** In his moving brief (p. 27 n. 10), plaintiff states that the Dayton Report was included in the records of the appeals of fellow employees *Alexander* (BAR decision rendered on Jan. 5, 1973), *Staskus* (BAR decision rendered on Mar. 14, 1973) and *Partridge* (BAR decision rendered on Aug. 9, 1971). Accordingly, while plaintiff may not have been aware of the Dayton Report until November 1974 as he claims, other fellow employees were aware of it and were utilizing it in support of their contention that their RIF separations were improper. Under such circumstances, it is difficult to accept plaintiff's position that in November 1974, the 1971 Dayton Report should be accepted as constituting new and material evidence justifying reopening and reconsideration of a December 19, 1972, decision on plaintiff's appeal.

Report inquiry. However, plaintiff, like Partridge, never produced evidence showing that this narrow competitive level was contrived or otherwise improper. The matter, restrictive competitive levels, covered by the Dayton Report was general in nature, except in the cases of six employees separated in 1970, whereas the appeal of Levinson, plaintiff herein, squarely faced the issue of the restrictiveness of his particular position. BAR's determination on this issue in plaintiff's cases has not been shown to be erroneous, and, under the limited standards of review which control in cases of this kind, BAR's determination must be upheld. *See Friedman v. United States, supra,* 214 Ct.Cl. at 805–06. Moreover, in both *Alexander v. United States, supra,* and *Staskus v. United States, supra,* the plaintiffs in those cases belabored in their briefs the Dayton Report and its generalized conclusions. Neither court in those cases was persuaded that the Dayton Report was material and relevant to the question of whether the particular position in issue was improperly restrictive so as to constitute a procedural violation. There is absolutely no basis for concluding, given the materials now before the court, that plaintiff's competitive level was improperly restrictive.

The decision of the CSC not to reopen or reconsider its prior decision cannot, under the circumstances, be deemed to be arbitrary, capricious or an abuse of discretion. In matters of this nature, the court should defer to the discretionary judgment òf the administrative body. *Keeling v. United States, supra,* 172 Ct.Cl. at 252.

After full consideration of the record and the briefs of the parties, it is concluded that BAR's decision affirming plaintiff's RIF separation was supported by substantial evidence and in accord with the applicable statute, regulations, and case law. Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, with plaintiff's petition (complaint) to be dismissed.