# United States Court of Appeals for the Federal Circuit

---

**MARIA ESPARRAGUERA,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2019-2293

---

Petition for review of the Merit Systems Protection Board in No. CB-3592-18-0022-U-1.

---

Decided: December 4, 2020

---

LUCAS M. WALKER, MoloLamken LLP, Washington, DC, argued for petitioner. Also represented by JEFFREY A. LAMKEN; MATTHEW JASON FISHER, Chicago, IL; CONOR DIRKS, DEBRA LYNN ROTH, Shaw, Bransford & Roth P.C., Washington, DC.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JEFFREY B. CLARK, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.; NADIA K. PLUTA, Office of General Counsel, United States Office of Personnel Management, Washington, DC; JASON R. CHESTER, United States

Army Corps of Engineers, United States Department of the Army, Alexandria, VA.

————————————

Before PROST, *Chief Judge*, LOURIE and MOORE, *Circuit Judges*.

PROST, *Chief Judge*.

This is a case about jurisdiction. Maria Esparraguera was removed for performance reasons from her senior executive position as the top labor lawyer at the Department of the Army ("Army") and placed instead into another high-level position at the same agency but outside the Senior Executive Service ("SES"). On appeal, Ms. Esparraguera effectively seeks to obtain review of the Army's removal decision and insists that she was deprived of constitutionally protected property and liberty interests without due process. By statute, Ms. Esparraguera cannot avail herself of the ordinary appellate provisions of the Merit Systems Protection Board ("Board") for this kind of removal. But she petitions for review of a Board order made under 5 U.S.C. § 3592(a), a narrow provision permitting a career senior executive removed for performance reasons to instead "appear and present arguments" at an "informal hearing." The resulting order, however, simply forwarded Ms. Esparraguera's evidence and arguments to her employer, the Army, for consideration—as well as to the United States Office of Special Counsel ("OSC") and Office of Personnel Management ("OPM"). For the reasons below, the appealed order—styled an "Order Referring Record"—is not a "final order or decision" of the Board, as required for our appellate jurisdiction over her removal. And because we lack jurisdiction, we must dismiss this appeal.

I

A

The federal civil service is divided into three parts: the competitive service, the excepted service, and the Senior Executive Service ("SES").  5 U.S.C. §§ 2101a, 2102, 2103; *United States v. Fausto*, 484 U.S. 439, 441 n.1 (1988).  This case concerns whether the Board can review the performance-based removal of employees from the SES.

Because SES cases are rare, a brief background on the SES itself is useful.

The Civil Service Reform Act of 1978 ("CSRA") reformed the federal civil service and "established a comprehensive system for reviewing personnel action[s] taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (quoting *Fausto*, 484 U.S. at 455); *see also* Pub. L. No. 95-454, 92 Stat. 1111.  The SES was designed to "provide the flexibility needed by agencies to recruit and retain the highly competent and qualified executives needed to provide more effective management of agencies and their functions, and the more expeditious administration of the public business."  CSRA, sec. 3(6), 92 Stat. at 1113.  The statutory framework governing the SES is meant to "ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131.  And its administration is meant to "enable the head of an agency to reassign senior executives to best accomplish the agency's mission," to "maintain a merit personnel system free of prohibited personnel practices," and to "ensure accountability for honest, economical, and efficient Government." *Id.* § 3131(5), (9), (10).

Senior executives are high-level federal employees who do not require presidential appointment but who nonetheless exercise significant responsibility—including directing

organizational units, supervising work, and determining policy—and who may be held accountable for their projects or programs. *Id.* § 3132(a)(2); *Fausto*, 484 U.S. at 441 n.1. Occupying significant positions of trust, senior executives are selected, in no small part, for their leadership abilities.[1] The SES is but a small arm of the federal civil service: about 8,000 federal employees are among the SES, whereas more than 1.8 million are not.[2]

There are two relevant mechanisms by which senior executives may be removed from the SES. First, senior executives may be removed—not only from the SES but from federal employment entirely—for "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). This pathway to removal includes procedural protections like those available for covered employees in the competitive and excepted services. *Id.* § 7543(b), (d); *cf. id.* §§ 7512, 7513. Second, senior executives may be removed from the SES under another set of procedures for "unsatisfactory" or "less than fully successful" performance. *Id.* §§ 3592(a), 4314(a)(3). Senior executives with "career" status who are removed in this way are

---

[1]    *See, e.g.*, OPM, *Senior Executive Service: Executive Core Qualifications*, https://www.opm.gov/policy-data-oversight/senior-executive-service/executive-core-qualifications/.

[2]    *See* OPM, *Senior Executive Service Report 2017*, at 3 (2018), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/ses-summary-2017.pdf; OPM, *Federal Executive Branch Characteristics (FEBC) FY 2010–2018*, at 5, https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/federal-executive-branch-characteristics-2010-2018.pdf.

guaranteed continued federal employment at the same pay grade. *Id.* § 3594. The loss of SES status, however, is accompanied by the loss of other benefits—and, of course, prestige. *See, e.g.*, *id.* §§ 3131(1), 5384, 6304(f).

To gauge performance, each agency is required to establish a performance appraisal system to rate senior executives from "outstanding" to "unsatisfactory" in one or more "critical elements." 5 U.S.C. §§ 4312, 4314(a); 5 C.F.R. § 430.305; *see, e.g.*, J.A. 13. Performance ratings are ultimately made by an agency's "appointing authority," *see* 5 U.S.C. § 4314(c)(3); for the Army, final performance rating authority has been delegated to the Under Secretary. J.A. 6, 177–78. To assist in making an ultimate performance determination, each agency is also required to establish one or more performance review boards ("PRBs"). 5 U.S.C. § 4314(c)(1). During performance appraisal, a senior executive's supervisor (or other rating official) provides the PRB with an "initial appraisal." *Id.* § 4314(c)(2). The senior executive is "provided a copy of the appraisal and rating . . . and is given an opportunity to respond in writing and have the rating reviewed by an employee . . . in a higher level in the agency." *Id.* § 4312(b)(3); *see also* 5 C.F.R. § 430.311(b)(1); J.A. 55. The PRB then reviews any "response by the senior executive to the initial appraisal" and may "conduct such further review as the [PRB] finds necessary." 5 U.S.C. § 4314(c)(2). The PRB then "make[s] *recommendations* to the appropriate appointing authority" as to the senior executive's performance. *Id.* § 4314(c)(1) (emphasis added). OPM is tasked with ensuring that each agency's performance appraisal system is adequate. *See* 5 U.S.C. § 4312(c)(1), (3); 5 C.F.R. § 430.314.

The final rating is significant: its consequences range from performance awards to removal. *See* 5 U.S.C. § 4314(b)(2)–(4). Nonetheless, a senior executive "may not appeal any appraisal and rating under any performance appraisal system." *Id.* § 4312(d).

B

1

As Chief Counsel of the Army's Communication-Electronics Command ("CECOM"), Ms. Esparraguera facilitated the selection of Rick Bechtel to replace a retiring division chief. The resulting chain of events led to her removal from the Senior Executive Service and, ultimately, to this appeal.

In 2014, a business-law division chief within CECOM announced his intent to retire. The resulting open position required a candidate to have had at least one year of experience at the GS-14 grade. The selection committee, chaired by Ms. Esparraguera, interviewed eleven candidates to fill the resulting vacancy. Mr. Bechtel was among Ms. Esparraguera's three favored finalists after the interview. But unlike the other ten candidates, Mr. Bechtel was a few months shy of the required time at GS-14, having been in his prior position for less than one year and at CECOM itself only since 2013. The other ten interviewed candidates were qualified.

No hiring decision, however, was made at that time. Rather, Ms. Esparraguera proposed an unorthodox—indeed, unprecedented—post-interview rotation plan for the final selection. *See* J.A. 273. Under the plan, each of the three finalists, including Mr. Bechtel, would act as the division chief for thirty days, and the decision would be made afterward. In three decades of service, Ms. Esparraguera had *never* used a post-interview rotation plan to hire anyone, nor was she aware of anyone in the Army ever using such a plan. J.A. 250–51.

Ms. Esparraguera consulted with human-resources specialists, who advised her both that the highly unusual trial rotation would unfairly advantage Mr. Bechtel (as he would then satisfy the time-in-grade requirement) and likely result in complaints, and that a time-in-grade waiver

for Mr. Bechtel would not be approved (as there was no shortage of qualified candidates). J.A. 239–40, 245–48. Further, Ms. Esparraguera's deputy chief counsel advised that the selection of Mr. Bechtel, who lacked substantial CECOM experience, would "tear the division apart." J.A. 269. As OSC later explained after investigating, a rotation would "delay[] a permanent appointment in an important leadership position and force[] both employees and customers to adapt to three leadership changes in a three-month span." J.A. 252.

Nonetheless, the trial rotation went forward at Ms. Esparraguera's behest. This three-month delay in selection meant that, by early 2015, Mr. Bechtel finally satisfied the time-in-grade requirement. After evaluation under a rubric designed and applied by Ms. Esparraguera, *see* J.A. 269, Mr. Bechtel was selected and the other two finalists were passed over. Before long, two complaints were filed with OSC alleging that Ms. Esparraguera had committed a prohibited personnel practice. J.A. 244.

Shortly thereafter, Ms. Esparraguera was reassigned within the SES, becoming the Army's senior-most attorney on civilian employment matters.

2

OSC investigated the allegations. It concluded that it "believe[d] Ms. Esparraguera's actions violated 5 U.S.C. § 2302(b)(6)." J.A. 241; *see* 5 U.S.C. § 2302(b)(6) (classifying as prohibited personnel practice the granting of "any preference or advantage not authorized by law, rule, or regulation to any . . . applicant . . . for the purpose of improving . . . the prospects of any particular person for employment"). In October 2016, OSC sent the Army a summary of its findings. J.A. 238–41. A copy of the summary was provided a few weeks later to Ms. Esparraguera through her supervisor. J.A. 43. In the summary, OSC recommended corrective and disciplinary action. J.A. 241.

In February 2018, OSC sent another report to the Secretary of the Army, noting that earlier attempts "to resolve this matter" had "not been successful." J.A. 242. At greater length, the report asserted that there was "no credible business reason" for the rotation plan, which was a "dramatic departure from past practice." J.A. 251. Finding that the purpose of the plan was to "provide Bechtel . . . an unfair advantage," OSC again recommended corrective and disciplinary action. J.A. 254; *see also* J.A. 115–16, 242.

By the time this report was sent, the performance appraisal process for fiscal year 2017 had already begun. Ms. Esparraguera received positive initial ratings, but in early 2018 she received a letter stating that the Army was holding her final rating in abeyance due to an ongoing investigation. J.A. 255. As a result of OSC's reporting, the Army had begun an internal investigation, and it eventually interviewed Ms. Esparraguera in May 2018. J.A. 43–44, 256–57, 282. After its investigation, the Army reprimanded Ms. Esparraguera, explaining that her "decision to change the manner of competition in the middle of the hiring process was harmful to morale and predictably created a perception of unfairness." J.A. 38; *see also* J.A. 631 ("Though the written reprimand mentioned that OSC's report found a prohibited personnel practice as background information, [it] did not rely on that particular finding . . . , and [the] reprimand is based not on your intent but on your actions."). The reprimand was temporary, to be removed from her file after one year. J.A. 39.

The Army, however, also convened a special PRB to make a recommendation to the Under Secretary about Ms. Esparraguera's final performance rating. The PRB recommended a "level 1" unsatisfactory-performance rating for leadership—and *only* for leadership—because of the

rotation scheme.  J.A. 6, 13.[3]  The PRB apparently did not make its rating known to Ms. Esparraguera before forwarding its recommendation to the Under Secretary.

On September 4, 2018, the Under Secretary adopted the recommendation and notified Ms. Esparraguera that she was being removed from the SES for performance reasons—though not from federal service entirely.  J.A. 6–8. The Under Secretary concurred with OSC's findings, which he felt "completely undermine[d] [her] credibility to serve" as "the Army's chief personnel attorney" and noted that he had "lost confidence in [her] ability to successfully perform [her] duties as an Army Executive."  J.A. 6.  Because Ms. Esparraguera was a career appointee in the civil service, she was placed into a GS-15 position with the Army— the highest pay grade in the General Schedule.[4]  J.A. 6–7.

---

[3]    Under the Army's SES performance appraisal system, a rating from level 1 (unsatisfactory) to level 5 (outstanding) is assigned to each of five critical elements of performance.  The overall performance rating is calculated from a weighted average of the five, but if any one element is "unsatisfactory," the overall performance rating is also "unsatisfactory."  *See* J.A. 13–18.

[4]    Notably, the Army did not remove Ms. Esparraguera for "misconduct" under 5 U.S.C. § 7543.  That would be a different case.

Instead, the Army removed Ms. Esparraguera for poor performance under § 3592.  *See also id.* § 4314(b)(3).  Although such a removal is not accompanied by a statutory or regulatory right to an appeal, 5 U.S.C. §§ 3592(a), 4312(d); 5 C.F.R. § 359.504; *see also infra* Section II.A, the decision to remove her in this manner guaranteed Ms. Esparraguera placement into an upper-echelon civil service position with no loss in current pay and with retention of career tenure.  5 U.S.C. §§ 3592(a), 3594; J.A. 6–7.  Further, a performance-based removal lacks a misconduct charge's

### 3

At the Army's invitation, Ms. Esparraguera submitted a detailed written request for reconsideration. J.A. 442. In that request, she explained at length her disagreement with the PRB, with OSC's account, and with the Army's summary of the findings, as well as her subjective intent in devising the rotation plan. J.A. 103–07, 430–32. The Under Secretary denied the request. J.A. 775. Ms. Esparraguera also submitted an administrative grievance of her reprimand, which was likewise denied. J.A. 471, 630–31.

Ms. Esparraguera then requested an informal hearing under 5 U.S.C. § 3592(a)(2), which entitled her to "appear and present arguments" before an "official designated by the Board." At that hearing, Ms. Esparraguera submitted a slew of exhibits designated A through UU into evidence and read a prepared statement into the record. J.A. 3. The Army neither presented evidence nor objected to the entry of these exhibits. J.A. 3. Ms. Esparraguera did not expressly ask the Board to review her removal—and it did not. The Board official issued the Order Referring Record at issue in this case, which summarized the proceedings and referred the transcript and exhibits to the Army, as

opprobrium. *See Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987).

It is true that the same conduct might merit either removal pathway. But we have previously recognized that the agency may elect to pursue either. *Berube v. Gen. Servs. Admin.*, 820 F.2d 396, 398–99 (Fed. Cir. 1987), *superseded by statute on other grounds as recognized in Lachance v. Devall*, 178 F.3d 1246, 1253 (Fed. Cir. 1999). Importantly, the government's choice to pursue a poor performance rating protects the employee from wholesale removal from federal employment.

well as to OSC and OPM.  J.A. 2; 5 C.F.R. § 1201.144(c).
The Army did not change its mind.  This appeal followed.

## II

On appeal, Ms. Esparraguera alleges due process vio-
lations surrounding her performance appraisal and re-
moval—including the Army's purported failure to follow
certain required procedures related to her notice and op-
portunity to respond—and contends that the Board should
have been empowered to review her removal.  The govern-
ment contends that the Board cannot review her removal,
that there was no deprivation without due process, and
that we lack jurisdiction over this appeal.

We have jurisdiction to determine our own jurisdiction.
*E.g.*, *Rosado v. Wyman*, 397 U.S. 397, 403 n.3 (1970).  But
we have jurisdiction over the Board only if there is a "final
order or final decision" of the Board that has "adversely af-
fected or aggrieved" an employee.  28 U.S.C. § 1295(a)(9);
5 U.S.C. § 7703.  As we explain below, here our jurisdiction
depends on whether the Board had jurisdiction to review
Ms. Esparraguera's removal—because if it did not, the ap-
pealed order would not have been a "final order or final de-
cision" that "adversely affected or aggrieved" her.  In short,
if the Board cannot review her removal, neither can we.

## A

We first consider whether Ms. Esparraguera's removal
was reviewable by the Board.  For the reasons below, we
conclude that the Board cannot review the removal of an
SES employee in an informal hearing under § 3592.

The Board has "only that jurisdiction conferred on it by
Congress."  *Dow v. Gen. Servs. Admin.*, 590 F.3d 1338,
1341–42 (Fed. Cir. 2010) (quoting *Cruz v. Dep't of the Navy*,
934 F.2d 1240, 1243 (Fed. Cir. 1991) (en banc)); *see, e.g.*,
5 U.S.C. § 7701(a) (appellate jurisdiction over employees'
actions).  A career appointee removed from the SES for
"less than fully successful executive performance" is

entitled upon request to an "informal hearing" before a Board-designated official. 5 U.S.C. § 3592(a). We must accordingly determine whether, through § 3592, Congress conferred the Board with appellate jurisdiction over the removal itself.[5]

We begin with the text, which reads, in relevant part:

> [T]he career appointee shall, at least 15 days before the removal, be entitled, upon request, to an informal hearing before an official designated by the Merit Systems Protection Board at which the career appointee may appear and present arguments, but such hearing shall not give the career appointee the right to initiate an action with the Board under section 7701 of this title, nor need the

---

[5] Arguing in favor of jurisdiction, Ms. Esparraguera points to the Board's regulations conferring *original* jurisdiction over "removals of career appointees from the Senior Executive Service for performance reasons." Appellant's Br. 58 n.13 (citing 5 C.F.R. §§ 1201.2, 1201.121(a)). But these regulations concern the Board's authority to hold the informal record-collecting hearing itself, not to review another agency's actions. This is evident from the Board's related procedural regulations, which spell out the nature of the informal hearing. *See* 5 C.F.R. §§ 1201.143–.145, 1201.2(b). What Ms. Esparraguera seeks is what the Board calls *appellate* jurisdiction, which the regulations do not confer in this case. *See id.* § 1201.3(a)(10) (not listing such removals among the Board's SES-related appellate jurisdiction). It is under the "appellate jurisdiction" label that the Board's regulations place review of an agency's removal decisions generally. *See id.* § 1201.3. Regardless, the regulations could not confer jurisdiction beyond what the statute grants.

removal action be delayed as a result of the grant-
ing of such hearing.

5 U.S.C. § 3592(a).

The text frames the "informal hearing" as an oppor-
tunity to be heard, not an adversarial forum. By statute,
the appointee is expressly entitled only to "appear and pre-
sent arguments." *Id.* The provision makes no mention of
any other procedural options, such as the right to represen-
tation or the right to call witnesses. It provides no right to
compel the agency to appear. Further, the hearing "shall
not give the career appointee the right to initiate an action
with the Board under [5 U.S.C. §] 7701," *id.*, which is the
general provision that governs all appellate proceedings for
covered employees for "any action" that "is appealable to
the Board," *id.* § 7701(a).[6]

That short provision is all the CSRA has to say about
informal hearings for performance-based SES removals. In
contrast, the CSRA speaks extensively on the substance
and procedure of appeals of other adverse actions. *See, e.g.*,
5 U.S.C. § 7701(a) (providing for a right of action for em-
ployee as to "any action which is appealable"), (b)(3) (ex-
pressly providing the Board authority under § 7701 to
mitigate an adverse action), (c) (expressly delineating
standards of review), (d) (explaining intervention rights),
(e) (spelling out finality of decisions), (f)–(h) (permitting
Board control of case consolidation, attorney fees, and

---

6    Ms. Esparraguera suggests that *our* appellate ju-
risdiction under § 7703 is not limited to Board orders made
under § 7701. Reply Br. 5–6. That much is true. *Horner
v. MSPB*, 815 F.2d 668, 671 (Fed. Cir. 1987). But for us to
review the Army's removal, the Board must have been able
to do so too. And Ms. Esparraguera has pointed to no pro-
vision outside § 7701 conferring the Board with appellate
jurisdiction over agency removal decisions.

settlement), (k) (empowering the Board to promulgate regulations to carry out the purpose of the section); *id.* § 7543(d) (expressly providing that an SES employee removed for misconduct is "entitled to appeal" substance of removal); *id.* § 3595(c) (expressly providing that SES employee removed under reduction in force is "entitled to appeal" procedural compliance of removal).

Indeed, the "exhaustive[]" structure of the "comprehensive system" of review established by the CSRA is instructive. *See Elgin*, 567 U.S. at 5, 11. The CSRA "prescribes in great detail the protections and remedies applicable" to adverse personnel actions, "including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443. The Supreme Court has previously stated that, given the "comprehensive nature of the CSRA," the fact that Congress "[did] not include [certain employees] in provisions for administrative and judicial review" was a "considered congressional judgment" that review on the merits was unavailable. *Id.* at 448–49.

We see no reason that Congress would use but two words—"informal hearing"—to give the Board review authority, thereby leaving the Board in the dark about its procedure, powers, and standard of review—details that it took great pains to spell out for other kinds of reviewable actions. Indeed, if the words of § 3592 *were* enough to imbue review power, we do not see why § 7701 would then be so detailed, or why Congress would have needed to affirmatively spell out in other instances what the Board *could* review.

For example, it is significant that the CSRA expressly gave *non*-executives the right to appeal performance-based actions, spelling out specific procedural requirements, but provided no parallel provision for senior executives. *E.g.*, 5 U.S.C. § 4303(b) (providing for attorney representation, notice of specific instances of unacceptable performance, opportunity to answer orally in writing, and right to

written decision specifying instances of unacceptable performance), (e)–(f) (specifying appeal rights). Similarly, the CSRA expressly conferred on senior executives removed for *misconduct* the right to appeal, with similar requirements. *Id.* § 7543(b), (d). Further, Congress chose in the CSRA to make PRB performance ratings simply a "recommendation" to the appointing authority and expressly made final performance ratings unappealable. *Id.* §§ 4312(d), 4314(c). Accordingly, we conclude that the Board lacks the authority to review the substance of the removal.

Nor does the Board have the authority to review the removal for procedural compliance. Elsewhere in the CSRA, Congress expressly made procedural compliance reviewable for career senior executives who were removed pursuant to a reduction in force. *See* 5 U.S.C. § 3595(c). That the CSRA says nothing about reviewability of procedural compliance for performance appraisals confirms that Congress did not provide for Board review.

Accordingly, the "exhaustive" structure of the CSRA favors unreviewability. *Accord Fausto*, 484 U.S. at 448–49.

Ms. Esparraguera makes two arguments about the text. She argues that the ordinary meaning of "hearing" is "a setting in which an affected person presents arguments to a decision-maker," and that we should therefore construe "informal hearing" as an "adjudicatory hearing at which the agency carries the burden of proving its charges before a neutral adjudicator empowered to overturn the agency's action." Appellant's Br. 54–55. We disagree. This is too much to divine from two words, especially in view of the otherwise exhaustive detail elsewhere in the CSRA.

Second, Ms. Esparraguera contends that because a post-removal hearing is "widely understood to be a fundamental feature of due process," we should "construe a statutory right to a post-removal 'hearing' as providing a hearing that satisfies the requirements of due process." Appellant's Br. 55 (emphasis omitted). But this argument

presupposes the deprivation of a due process interest—and specifically one that would necessitate an adjudicatory hearing.  For the reasons explained above and below, we cannot reach Ms. Esparraguera's due process arguments. But even if Ms. Esparraguera were correct about this interest and its deprivation, the CSRA is "comprehensive." *Elgin*, 567 U.S. at 10–11; *Fausto*, 484 U.S. at 448.  And the text and structure of the CSRA are clear enough that we could not, as a reasonable remedy, *expand* the Board's limited jurisdiction where Congress foreclosed review.

In summary, Congress did not make this kind of removal reviewable by the Board.[7]  Accordingly, we hold that a Board official in a § 3592 hearing has no authority to review an SES appointee's removal.

B

The jurisdictional question for us remains as follows: given that the Board lacks review authority under § 3592, is the Order Referring Record a "final order or decision" of the Board by which Ms. Esparraguera was "adversely affected or aggrieved"?  We conclude that it is not.

We are a court of limited jurisdiction.  *Morris v. Off. of Compliance*, 608 F.3d 1344, 1346 (Fed. Cir. 2010) ("The jurisdiction of this court is 'limited to those subjects encompassed within a statutory grant of jurisdiction.'" (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982))).  And our jurisdiction over the Board is restricted to an appeal brought under 5 U.S.C. § 7703 from "a final order or final decision."  28 U.S.C.

---

[7]    We are not the first to say so.  The Board and at least one district court have already held that performance-based SES removals are unreviewable by the Board.  *See Greenhouse v. Geren*, 574 F. Supp. 2d 57, 67 (D.D.C. 2008) (citing *Charrow v. Fed. Ret. Thrift Inv. Bd.*, 102 M.S.P.R. 345, 349 (M.S.P.B. 2005)).

§ 1295(a)(9).  In turn, § 7703 requires that an "employee or applicant" be "adversely affected or aggrieved by a final order or decision" of the Board."  5 U.S.C. § 7703(a).

Ms. Esparraguera argues that because the Order Referring Record was the *last* action from the Board related to her removal, it was "final."  But "final" does not merely mean "last in time."

We apply the "final judgment rule" to Board appeals. *Weed v. Soc. Sec. Admin.*, 571 F.3d 1359, 1361 (Fed. Cir. 2009) (citing 5 U.S.C. § 7703; 28 U.S.C. § 1295(a)(9)).  That rule provides that an order or decision is ordinarily "final" only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Id.* (quoting *Allen v. Principi*, 237 F.3d 1368, 1372 (Fed. Cir. 2001)); *see also Kaplan v. Conyers*, 733 F.3d 1148, 1153–54 (Fed. Cir. 2013) (en banc) ("[T]his court lacks jurisdiction to review non-final Board decisions.").[8]  Finality is a "historic characteristic of federal appellate procedure." *Flanagan v. United States*, 465 U.S. 259, 263 (1984) (quoting *Cobbledick v. United States*, 309 U.S. 323, 324 (1940)).

The Order Referring Record was not "final" with respect to Ms. Esparraguera's removal.  As discussed, the Board was not empowered under § 3592 to review Ms. Esparraguera's removal, and the proceeding bore none of the adversarial hallmarks of adjudication.  Rather, the Board simply acted as a ministerial record-developing adjunct to the Under Secretary, enabling Ms. Esparraguera to enter her arguments and evidence into the record for the Under Secretary's ultimate consideration.  *See also, e.g.*, *Morrison*

---

[8]    Alternatively, a "small class" of collateral orders are "final" for review purposes where they "resolve important questions separate from the merits."  *Kaplan*, 733 F.3d at 1153–54.  Ms. Esparraguera makes no argument that this is such an order.

*v. Dep't of the Navy*, 876 F.3d 1106, 1109–11 (Fed. Cir. 2017) (deeming order not "final" where the Board simply forwarded a case to another decisionmaker for further proceedings). The Order therefore did not dispose of the "case" of her removal; that case was never before the Board.[9]

Finally, Ms. Esparraguera argues that the presumption in favor of judicial review mandates that she have a forum for her constitutional challenge. And she argues that, under *Elgin*, judicial review must occur in the Federal Circuit in cases involving CSRA-related removals. Appellant's Br. 3–4; Reply Br. 14 n.3.

We are not persuaded that *Elgin* requires (or even empowers) *this court* to review the due process question under these circumstances. To be sure, *Elgin* held that we, as opposed to district courts, have jurisdiction over constitutional issues associated with certain challenges to adverse actions under the CSRA. *See* 567 U.S. at 11–12, 18–19, 21. But that holding was premised on the petitioners in that

---

[9]    Ms. Esparraguera also argues that she was "adversely affected or aggrieved" by the Order Referring Record because it did not "grant relief from her removal." *See* Appellant's Br. 2. But the Board had no power to review her removal in any capacity. A party cannot be "adversely affected or aggrieved" within the meaning of the statute by the Board's failure to grant relief that it had no authority to grant. The government also suggests that Ms. Esparraguera forfeited her arguments by not affirmatively asking the Board official during her hearing to rule on the merits or correct a due process violation—in other words, that she cannot be "adversely affected or aggrieved" by the order because she did not expressly ask for the relief she now seeks. Appellee's Br. 27–29. Our futility doctrine complicates forfeiture, *see Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1339 (Fed. Cir. 2019), but we need not reach that question.

case being "covered employees challenging a covered adverse employment action" under the CSRA—which meant that the Board could review the challenged action, and that this court could review the Board's decision and the accompanying constitutional issues. *Id.* at 21. In other words, under *Elgin*, the CSRA channels judicial review of an adverse action exclusively through the Federal Circuit only if it first channels review through the Board.

In contrast, here the Board had no jurisdiction over the removal and we have no "final order" to review. *Cf. id.* at 18 (noting Federal Circuit's authority to decide constitutionality "in an appeal from agency action within the MSPB's jurisdiction"). And as we have discussed, our jurisdiction is limited by statute: we cannot decide a case simply because a claim arises under the Constitution. So even assuming that Ms. Esparraguera is correct that she must be able to present her constitutional claim before *a* court, we are unpersuaded that this means *our* court.

At any rate, we also doubt that our lack of jurisdiction leaves Ms. Esparraguera's constitutional claims unreviewable. We observe, as does the government, that district courts have indeed been willing even after *Elgin* to hear constitutional challenges where Board review of an adverse employment action is unavailable. *E.g.*, *Coleman v. Napolitano*, 65 F. Supp. 3d 99, 103–05 (D.D.C. 2014) (holding that a district court had jurisdiction to hear plaintiff's due process claim where Board review was unavailable under the CSRA); *Davis v. Billington*, 51 F. Supp. 3d 97, 106–09 (D.D.C. 2014) (same); *Lamb v. Holder*, 82 F. Supp. 3d 416, 422–24 (D.D.C. 2015) (same); *accord Semper v. Gomez*, 747 F.3d 229, 241–42 (3d Cir. 2014) (concluding that a "federal employee who could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review" would not be precluded by the CSRA from bringing a district court constitutional challenge); *see also Webster v. Doe*, 486 U.S. 592, 603–04 (1988) (holding that a constitutional claim was reviewable in

district court even where the substance of the underlying termination decision was not).  To be clear, our holding today does not depend on whether judicial review might be available elsewhere.  That is not the question before us.  The question today concerns only the scope of our narrow statutory grant of jurisdiction.  And our jurisdiction has clearly been constrained by Congress.

***

In summary, we hold that, with respect to her removal, Ms. Esparraguera was not adversely affected or aggrieved by a "final order or final decision of the Merit Systems Protection Board."  *See* 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703(a)(1).  We therefore lack jurisdiction over the due process question.

III

We have considered Ms. Esparraguera's remaining arguments and find them unpersuasive.  For the reasons discussed above, the Board lacks jurisdiction to review Ms. Esparraguera's removal and, accordingly, so do we.  We therefore dismiss this appeal without reaching the due process question.

**DISMISSED**