# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 20, 2023        Decided May 10, 2024

No. 22-5150

MARIA ESPARRAGUERA,
APPELLANT

v.

DEPARTMENT OF THE ARMY, ET AL.,
APPELLEES

Consolidated with 23-5002

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cv-00421)
(No. 1:22-cv-01109)

*Lucas M. Walker* argued the cause for appellant. With him on the briefs were *Debra L. Roth*, *Christopher J. Keeven*, *Conor D. Dirks*, *Jeffrey A. Lamken*, and *Matthew J. Fisher*.

*Brad Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Charles W. Scarborough*, Attorney.

1

Before: HENDERSON and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

GARCIA, *Circuit Judge*:  Maria Esparraguera served as a career appointee in the Senior Executive Service—the top corps of managers in the federal government—until the Department of the Army removed her from those ranks. Esparraguera sued, claiming that the Army violated her constitutional due process rights.  That claim depends on showing that the removal implicated a property interest protected by the Due Process Clause.  The district court dismissed her suit for failing that threshold requirement.  We reverse.

**I**

**A**

The Civil Service Reform Act of 1978 ("CSRA") "established a comprehensive system for reviewing personnel action taken against federal employees."  *United States v. Fausto*, 484 U.S. 439, 455 (1988).  As relevant here, the CSRA created the Senior Executive Service ("SES"), a class of managerial employees including career and political appointees.   The SES was created to "ensure that the executive management" of the federal government "is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality."  5 U.S.C. § 3131.  The SES is accordingly "designed to attract and retain highly competent senior executives" and to "ensure that compensation, retention, and tenure are contingent on executive success."  *Id.* § 3131(1)–

(2).  Employees often work decades in the federal government before joining the SES.

The CSRA specifies how an employee can join the SES and be removed from it.  To become a career SES appointee, an employee must be selected based on merit and must first serve a one-year probationary period.  *Id.* § 3393(d).  During that period, the employee can be removed from the SES for any reason.  *Id.* § 3592(a)(1).  After the probationary period, career senior executives may "not be removed from the Senior Executive Service or civil service except in accordance with" five specified CSRA provisions.  *Id.* § 3393(g).  The provision at issue here allows a career executive to be removed from the SES to a civil service position outside of the SES "at any time for less than fully successful executive performance as determined under subchapter II of chapter 43" of the CSRA.  *Id.* § 3592(a)(2).

That subchapter, in turn, requires each agency to create a performance appraisal system for assigning performance ratings to SES employees based on "critical elements" of their positions.  *Id.* § 4312(a)(1).  Those ratings serve as "a basis for making eligibility determinations for retention . . . and performance awards."  *Id.* §§ 4312(a)(4), 4314.  The statute creates a process for assigning a final rating, which includes an initial appraisal from a supervisor, input from the employee, a recommendation from a performance review board ("PRB"), and a final rating made by the appointing official.  *Id.* § 4314(c).  The final rating matters:  A high rating qualifies employees for performance awards, and a low rating subjects employees to reassignment, transfer, or removal.  *Id.* § 4314(b).  The rating is not appealable.  *Id.* § 4312(d).

The Army created its performance appraisal system in Army Regulation 690-920, Appendix D. [1] The regulation provides for five "performance rating levels," the lowest two of which equate to "less than fully successful performance" and thus expose a career SES employee to removal from her position under Section 3592(a)(2). *Id.*

**B**

Because we are reviewing a motion to dismiss, we accept the allegations in Esparraguera's complaint as true. Esparraguera joined the SES as a career appointee in 2010. In the period relevant to this suit, she served as the Army's highest ranking civilian personnel attorney. During her 2017 performance appraisal process, her supervisor initially recommended the highest rating, Level 5 "Outstanding." On February 2, 2018, Esparraguera was informed that her rating was being held in abeyance pending an investigation, although the letter did not identify the basis for the investigation or who was conducting it. The investigation, it turned out, concerned her role in a 2014-15 hiring decision and was being conducted by the Office of Special Counsel ("OSC"), which sent a report to the Army on February 9, 2018. The report recommended disciplinary action against Esparraguera because OSC believed she had committed a prohibited personnel action during that 2014-15 hiring process. The Army, at OSC's request, denied Esparraguera a copy of the OSC Report.

The Army then convened a special PRB, which recommended to the appointing official, Under Secretary Ryan

---

[1] This Army Regulation was superseded by Army Regulation 690-200 on January 29, 2020, but was in effect at the time of Esparraguera's removal.

McCarthy, that Esparraguera's rating be lowered from Level 5 "Outstanding" to Level 1 "Unsatisfactory." The special PRB reviewed only an "executive summary" of the OSC report prepared by Army staff. Esparraguera was not aware of the special PRB nor given an opportunity to respond to the Army's investigation of the events underlying the OSC report until after the PRB issued its recommendation.

On September 4, 2018, Under Secretary McCarthy finalized Esparraguera's Level 1 rating and notified Esparraguera that she would be removed from the SES effective October 14, 2018, for "unacceptable performance." The Army demoted Esparraguera to a GS-15 human resources position, which paid the same basic rate as her SES position but affected other benefits including paid leave. The Under Secretary stated that Esparraguera's removal was based on the PRB's recommendation and the OSC report, neither of which Esparraguera had been given an opportunity to address. On September 21, 2018, after issuing the removal decision letter, the Army provided Esparraguera the OSC report.

Esparraguera then asked Under Secretary McCarthy to reconsider, which he declined to do. On September 26, 2018, she also requested an "informal hearing" before the Merit Systems Protection Board ("MSPB"), a separate agency generally tasked with adjudicating federal employment disputes. Employees removed under Section 3592(a)(2) are entitled to such a hearing "at least 15 days before the removal." 5 U.S.C. § 3592(a)(2). On June 5, 2019, the MSPB held an informal hearing. On June 20, 2019, the MSPB referred the hearing's record and transcript to OSC, the Office of Personnel Management, and the Army, but stated that it could not issue a dispositive decision or grant any relief. No agency took further action.

Esparraguera initially appealed the MSPB order to the Federal Circuit, but that court dismissed her suit for lack of jurisdiction. *Esparraguera v. Dep't of the Army*, 981 F.3d 1328, 1329 (Fed. Cir. 2020). Esparraguera then filed suit in district court. The district court dismissed Esparraguera's due process claim, finding that she had no constitutionally protected property interest in her SES status. *Esparraguera v. Dep't of the Army*, No. CV 21-421, 2022 WL 873513, at *4 (D.D.C. Mar. 24, 2022). The district court accordingly did not address whether the process Esparraguera received (or the absence thereof) comported with the Due Process Clause. Esparraguera now appeals.[2]

**II**

We review the district court's dismissal of Esparraguera's complaint *de novo* and "accept the operative complaint's well-pleaded factual allegations as true." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).

To assess Esparraguera's procedural due process claim, we first determine whether she was "deprived of a protected interest." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of UDC*, 56 F.3d 1469, 1471 (D.C. Cir. 1995). If so, "we then determine whether [she] received the process [she was] due." *Id.* We conclude that Esparraguera had a protected property interest in her SES status and that the government was required to provide her, at a

---

[2] For reasons not relevant here, Esparraguera filed a second lawsuit asserting the same claim and the district court dismissed that suit on preclusion grounds. *Esparraguera v. Dep't of the Army*, No. CV 22-1109, 2022 WL 17668808, at *3 (D.D.C. Dec. 14, 2022). Esparraguera appealed that order as well and we consolidated the appeals.

minimum, some form of meaningful notice and an opportunity to be heard before removing her from the SES.

**A**

Whether a government employee has a constitutionally protected property interest in her position turns on the extent of any substantive limitations on the government's authority to remove her. We have framed the inquiry as whether the "substantive provisions" governing the position specify "particularized standards or criteria [to] guide the . . . decisionmakers" seeking to remove the employee. *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988) (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

If the employee serves at will—that is, if the government may remove her for "any constitutionally permissible reason or for no reason at all"—the employee has no property interest. *Olim*, 461 U.S. at 249 (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981) (Brennan, J., concurring)). The same is true if the government has free rein to remove the employee for any reason *except* for certain specified reasons, such as where a statutory bar on discriminatory firings applies. *See Garrow v. Gramm*, 856 F.2d 203, 207 (D.C. Cir. 1988); *Hall v. Ford*, 856 F.2d 255, 266 (D.C. Cir. 1988). In those situations, the employee has "no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall*, 856 F.2d at 265.

By contrast, an employee has a property interest if the government has "fostered rules and understandings" which entitle the employee "to believe that [she] would lose [her] job only for a job-related reason." *Ashton v. Civiletti*, 613 F.2d 923, 928 (D.C. Cir. 1979); *see also Stone v. Fed. Deposit Ins.*

*Corp.*, 179 F.3d 1368, 1374 (Fed. Cir. 1999) ("If the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment."). Put another way, a property interest exists if the employee can "be removed only for cause." *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008) (internal quotation marks omitted). That is because an employee removable for cause "can expect to remain employed *unless* they do something warranting their termination." *Hall*, 856 F.2d at 265 (emphasis in original).

Under that framework, the statutory and regulatory provisions applicable here gave Esparraguera a property interest in her SES status.

To begin, the CSRA sets the baseline expectation that a "career appointee may not be removed from the Senior Executive Service or civil service except in accordance with" five specified provisions, one of which is the provision in Section 3592(a)(2) that the Army relied on here. 5 U.S.C. § 3393(g). Section 3592(a)(2) allows a career SES employee to be removed only based on a finding of "less than fully successful executive performance as determined under subchapter II of chapter 43 of this title." *Id.* § 3592(a)(2).

That language in Section 3592(a)(2)—even viewed in isolation—is similar to language that our court and others have held creates a property interest by conditioning removal on poor job performance. For example, the Supreme Court found a property interest created by a state law that said employees would retain their positions "during good behavior and efficient service" and could not be dismissed "except . . . for . . . misfeasance, malfeasance, or nonfeasance in office." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39

(1985); *see also Wheaton v. Webb-Petett*, 931 F.2d 613, 616–17 (9th Cir. 1991) (Oregon law creates property interest by stating that employee would be removed only if he was "unable or unwilling to fully and faithfully perform the duties of the position satisfactorily"). Similarly, both our court and the Federal Circuit have held that 5 U.S.C. § 7513, a CSRA provision that allows agencies to remove certain employees "only for such cause as will promote the efficiency of the service," creates a property interest. *Johnson v. United States*, 628 F.2d 187, 192–94 (D.C. Cir. 1980); *Stone*, 179 F.3d at 1375. The Federal Circuit has also found that a removal under 5 U.S.C. § 4303—which permits removal of certain employees "for unacceptable performance"—implicates a property interest. *Stone*, 179 F.3d at 1375.

Courts have also found that non-statutory language can create the requisite property interest. In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court held that a college faculty guide created a property interest by stating that the college "wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." *Id.* at 600. And in *Ashton*, we reviewed an FBI employee handbook stating, "'You may assume that your position is secure, if you continue to do satisfactory work.'" 613 F.2d at 929. We explained that the handbook gave rise to a property interest because it sufficiently conveyed "the understanding that appellant did not hold his position at the whim of his superiors"—instead, by conditioning removal on unsatisfactory work, the handbook indicated "that he would lose his position only for behavior which impaired his efficiency or that of the Bureau." *Id.*

None of these provisions spelled out exactly what "satisfactory work," "efficiency of the service," or "unacceptable performance" means. What mattered was that the employees could not be removed "at the whim of [their] superiors," *id.*, and instead could expect to remain in their positions unless their supervisors found that they failed to meet those supervisors' definitions of, for example, "satisfactory work." Section 3592(a)(2)'s "less than fully successful executive performance" requirement can be understood similarly.[3]

But Section 3592(a)(2) need not—and should not—be read on its own. Two features of the governing legal

---

[3] The government agrees that another CSRA provision governing career SES appointees, 5 U.S.C. § 7543(a), creates a property interest. Gov't Br. 27. That provision permits the government to suspend or terminate a career SES employee from federal employment entirely "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.*; *see* 5 U.S.C. § 7542. The government argues that because Congress did not use the same language in Section 7543 and Section 3592(a)(2), Section 3592(a)(2) should not be interpreted as equivalent to a for-cause provision. As we have just explained, however, there are many different formulations that can create a property interest. The question here is not whether Congress set the same standard for terminations under Section 7543(a) and demotions under Section 3592(a)(2); indeed, there are obvious reasons the standard for full termination would be higher than that for demotion. The inquiry instead remains whether the "substantive provisions" governing the demotion specify "particularized standards or criteria [to] guide the . . . decisionmakers" seeking to demote the employee. *Griffith*, 842 F.2d at 495. And as this opinion further explains, the limitation found in Section 3592(a)(2), paired with the CSRA's performance appraisal system and applicable regulations, does so.

framework confirm that a career SES appointee has a property interest in her SES status.

First, the statute specifies that "less than fully successful performance" must be "determined under subchapter II of chapter 43." 5 U.S.C. § 3592(a)(2). That subchapter sets forth the CSRA's detailed performance appraisal system. *Id.* §§ 4311–15. It requires each agency's performance appraisal system to include "one or more fully successful levels," "a minimally satisfactory level," and "an unsatisfactory level." *Id.* § 4314(a)(1)–(3). The statute indicates this rating system should promote objectivity—for example, it creates PRBs which are to be appointed "in such a manner as to assure consistency, stability, and objectivity in the performance appraisal," *id.* § 4314(c)(4), and it requires the final decisionmaker to consider the PRB's recommendations, *id.* § 4314(c)(3).

The Army's performance appraisal system has five rating levels. The regulation is clear, as the statute envisions, that the Under Secretary must operate within that scheme and "assign a rating level." Army Reg. 690-920 ¶ 5-5(d). A Level 3 rating stands for "fully successful," meaning a Level 2 or 1 is "less than fully successful" and exposes a career SES employee to removal under Section 3592(a)(2). *Id.* at App. D. The Level 3 rating is defined as follows: "Performance in relation to performance requirements is of such quality that it would be expected only of a proven, competent executive. At least meets requirements for all critical elements." *Id.* The next level down is "minimally satisfactory," defined as: "Performance in relation to performance requirements is less than that expected of a proven, competent executive. Performance indicates a need for improvement in one or more critical elements. The executive must improve to warrant retention." *Id.* The referenced "critical elements" are

specifically defined for each role. *See* J.A. 49 ("Agency-Specific Performance Requirements").

In practical terms, those definitions mean the Under Secretary may not find an appointee was "less than fully successful" and remove her from the SES *unless* he finds that she needs "improvement in one or more critical elements." If the Under Secretary finds the employee "meets requirements for all critical elements," he must assign a Level 3 "fully successful" rating and cannot demote her. These detailed regulations enhance employees' legitimate expectations of continued employment because employees know they cannot be removed unless they perform poorly on specified metrics.

Second, the surrounding statutory provisions in Section 3592 confirm that the required finding of "less than fully successful executive performance" is a meaningful constraint. Recall that career SES appointees must complete an initial one-year probationary period. *See* 5 U.S.C. § 3393(d). Section 3592(a)(1) grants the government authority to remove appointees "during the 1-year period of probation" without *any* substantive restriction at all. *Id.* § 3592(a)(1). SES appointees plainly serve at will during that year and have no property interest in their newly acquired SES status. But after that probationary period, per Section 3592(a)(2), the specific finding of "less than fully successful executive performance" must be made before an appointee can be removed from the SES. Congress's choice to add that substantive limitation only after a probationary period indicates that Congress intended it to be a meaningful constraint on removal from the SES; otherwise, the limitation would serve no purpose. *Ashton* drew on an analogous contrast to "confirm[]" that the "satisfactory work" limitation there gave rise to a legitimate expectation of continued employment. 613 F.3d at 929. Our reasoning in *Ashton* applies with equal force here: "A

probationary period, of course, would be unnecessary if the employer could dismiss a non-probationary employee at any time and for any reason." *Id.*

Another neighboring provision, Section 3592(c), states that a "limited emergency appointee, limited term appointee, or noncareer appointee may be removed from the [SES] at any time," also without any substantive limitation. 5 U.S.C. § 3592(c). These appointees have no legitimate expectation of continuing in their roles. Again, the contrast with Section 3592(a)(2) suggests that a career SES appointee who has completed her probationary period can expect to continue in the SES unless agency officials make a finding that she has performed inadequately in her job.

Taken together, the statutory provisions of the CSRA and the Army's implementing regulations provide sufficiently "particularized standards or criteria [to] guide the . . . decisionmakers," *Griffith*, 842 F.2d at 495, and create a property interest in a career SES position.

**B**

The government's contrary arguments are incorrect. The government's core argument—which our dissenting colleague endorses—is that the substantive limitations on removal from the SES under Section 3592(a)(2) are too insubstantial. The lone authority the government identifies as involving comparable limitations is *Griffith*, where we held that the Federal Labor Relations Act ("FLRA") did not confer a property interest in pay raises. *Id.* at 505. That statute said that employees would receive raises if they were "of an acceptable level of competence as determined by the head of the agency." *Id.* at 496 (quoting 5 U.S.C. § 5335(a)(3)(B)). If the "acceptable level of competence" requirement was not

sufficiently specific to give rise to a property interest, the government urges, neither is Section 3592(a)(2)'s "less than fully successful performance." But *Griffith* is markedly different from this case.

First, *Griffith* concerned whether an employee had a property right in yearly pay raises, which is more "similar[] to a promotion" than the demotion at issue here. *Id.* at 498. We emphasized there that courts "have hardly ever found an entitlement to a promotion," and we used that important "context" to distinguish *Griffith* from other cases (including *Ashton* and *Johnson*) finding property interests when demotion or removal was at issue. *Id.* at 500–02.

Second, the "acceptable level of competence" language at issue in *Griffith* was not further constrained by the agency's performance appraisal system. *Id.* at 496 (citing *Creamer v. United States*, 174 Ct. Cl. 408, 413 (1966) ("Congress clearly abandoned, for in-grade raises, any connection with annual performance ratings.")). And the regulations that did govern "plainly did not further constrain the agency head's discretion," because they did not establish "any kind of test" for the agency head to apply to determine whether the employee's performance supported a promotion. *Id.* at 497. Indeed, our court was careful to acknowledge that its holding would not apply to then-recently amended FLRA regulations, which "tie[d] the determination of acceptable performance for within-grade increases into the existing agency performance appraisal systems, and thus may place somewhat greater constraints on the agency head's discretion." *Id.* at 497 n.5. Here, that very "tie" exists: As we have explained, the CSRA requires that "less than fully successful" performance be determined by the agency performance appraisal system, which the Army in turn has defined with substantive content in its regulations.

Third, *Griffith* placed great weight on "Congressional concern for flexibility," 842 F.2d at 501, as demonstrated by the FLRA's legislative history, which showed that Congress's intent was to provide an agency head "flexibility in awarding such advancement" as a "useful tool in eliciting high-quality performance," *id.* at 499. The government argues that the CSRA should be read similarly, pointing to legislative history stating in general terms that the SES should resemble "the kind of system that has been highly successful in the private sector," S. Rep. No. 95-969, at 11 (1978), and "was to be a fluid, highly competitive group of executives" who would be "subject to legally unencumbered removals for poor performance," S. Rep. No. 98-351, at 3 (1984).

Unlike in *Griffith*, however, those statements—at least if we were to read them as the government asks us to—contradict the statute's text and declarations of purpose (not to mention the governing regulations).[4] Two of the CSRA's declared purposes in establishing the SES are to "attract and retain highly competent senior executives," 5 U.S.C. § 3131(1), and

---

[4] It bears mention, moreover, that the government and dissent overread the legislative history even on its own terms. Both seize on the 1984 Senate Report's expansive statement that Congress in 1978 intended SES employees to be "subject to legally unencumbered removals for poor performance." S. Rep. No. 98-351, at 3; *see* Dissenting Op. 10–11. That statement, however, was not addressing Section 3592(a)(2) at all—it was a general (and post hoc) description of the SES program as a whole, "not directed to any particular statutory language." *Telesat Canada v. FCC*, 999 F.3d 707, 711 (D.C. Cir. 2021). When properly viewed for what it is, the statement is even more plainly contrary to the statute Congress actually enacted. All agree that the CSRA in fact significantly encumbers "removals" at least with respect to termination of career SES appointees. *See* Dissenting Op. 3; *see also* 5 U.S.C. §§ 3393(g), 1215, 7543.

"ensure that compensation, retention, and tenure are contingent on executive success," *id.* § 3131(2). The statute goes on to specify that "executive success" should be "measured on the basis of individual and organizational performance (including such factors as improvements in efficiency, productivity, quality of work or service, cost efficiency, and timeliness of performance and success in meeting equal employment opportunity goals)." 5 U.S.C. § 3131(2). Those statutory purposes are served by requiring some objective assessment of performance—as the parenthetical listing of factors suggests and the statute and regulations prescribe—before demoting an employee from the SES ranks, not by allowing fully unencumbered removals from the SES. It is true, as the government emphasizes, that one goal of the SES was to create a class of skilled employees who could be moved *across* SES positions flexibly, and the statute appears to provide no property interest in any particular SES position. *See, e.g.*, *id.* § 3131(5) (stating a purpose is to "enable the head of an agency to reassign senior executives to best accomplish the agency's mission"). But the statute's text does not evince a similar concern for flexibility in the sense of agencies' ability to move career employees out of the SES class itself.

Admittedly, one factor *Griffith* identified as counseling against a property interest finding is present here: The removal decision is vested "in a specific party," 842 F.2d at 498, the Under Secretary. Such vesting can suggest the decision is entrusted to that party's judgment, a suggestion the Army Regulation reinforces by stating that officials have "substantial discretion" when assigning a rating. Army Reg. 690-920, App. D.

But the crux of our inquiry remains whether the removal decision—however many people make it—is subject to meaningful substantive constraints that "guide" the

decisionmaker(s). *Griffith*, 842 F.2d at 496. Here, for all the reasons given above, the removal decision is so constrained. To illustrate the point, the Under Secretary could certainly exercise his judgment and disagree with a proposed rating because he believed an employee was effective (or not) at one of the critical elements of her job. But he is prohibited by the statute and regulations from deciding, with no reason at all, that an employee should be rated a Level 1 or 2 instead of a Level 3, 4, or 5. And he cannot remove an employee under Section 3592(a)(2) without first making the requisite findings and assigning a final rating of Level 1 or 2. That is why removal under Section 3592(a)(2) is meaningfully different from at-will employment, where a supervisor may remove an employee for any reason or no reason at all.[5]

*Griffith* is materially distinguishable from this case, and yet it is conspicuously the only case the government or the

---

[5] The dissent maintains that the substantive constraints imposed by Section 3592(a)(2) and the implementing regulations remain too insubstantial to give rise to a property interest because they do not "cover every situation" or rule out all consideration of "intangibles" and thus leave some discretionary judgment to the Under Secretary. *See* Dissenting Op. 6–7. If that view were the law, however, it is difficult to see how most of the binding decisions discussed above, *supra* at 7–9, could have been correctly decided. *See, e.g.*, *Johnson*, 628 F.2d at 192–93 (finding property interest where employee could be dismissed only for "such cause as will promote the efficiency of the service," which "is not restricted to testing the employee's work-efficiency or his performance on the job" (quotation omitted)); *Ashton*, 613 F.2d at 929 (finding property interest where removal was conditioned on "satisfactory work"); *Perry*, 408 U.S. at 600 (similar). This case may be close to the line, but viewing Section 3592(a)(2) in light of the surrounding statutory provisions, the governing regulations, and binding precedent, the limits it imposes are sufficient to give rise to a property interest.

dissent identify as finding no property interest in purportedly similar circumstances. [6] Because Esparraguera could reasonably believe she "would lose [her] job only for a job-related reason," *Ashton*, 613 F.2d at 928, she had a property interest protected by the Due Process Clause.

Finally, the government observes that the MSPB has suggested the lack of a right to appeal a Section 3592(a)(2) demotion to the MSPB indicates there is no constitutionally protected property interest. *Berger v. Dep't of Energy*, 36 M.S.P.R. 48, 52–53 (1987); *see also Esparraguera*, 981 F.3d at 1336 (holding that the MSPB does not have appellate

---

[6] And indeed, the cabined discretion afforded to the Under Secretary here stands in sharp contrast to the authority provided to agency decisionmakers in other cases where we held there was no property interest. For example, in *Webster v. Doe*, 486 U.S. 592 (1988), the statute stated that "the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States." *Id.* at 594. That grant of unfettered discretion establishes a relationship akin to at-will employment, as this court held on remand from the Supreme Court. *Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir. 1993). We reached a similar conclusion in *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023), where we held that an FBI memorandum did not create a property interest when it provided the FBI Director "discretion to act without hesitation" to summarily dismiss employees "where the safety of the public, our fellow employees, national security interests or other compelling considerations may be at stake." *Id.* at 293. That memorandum—unlike the statute and regulations here—contained no specific directives "to the referenced decisionmakers that would indicate a 'particular outcome must follow' from predicate findings." *Id*. at 295 (quoting *Tarpeh-Doe v. United States*, 904 F.2d 719, 723 (D.C. Cir. 1990)).

jurisdiction to review Section 3592(a)(2) demotions). The dissent endorses this view, arguing that the extent of procedural protections Congress provides should inform the question of whether a property interest exists. Dissenting Op. 8–10.

The Supreme Court has made clear, however, that whether a property interest exists is not "defined by the procedures provided for its deprivation." *Loudermill*, 470 U.S. at 541. The "categories of substance and procedure are distinct" and "were the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology." *Id.* Reflecting that fact, none of our circuit's cases rely on the existence (or not) of specified procedures for taking an employment action in determining whether a substantive property interest has been created. *See, e.g.*, *Ashton*, 613 F.2d at 928 (finding property interest created despite absence of any procedural rights); *Griffith*, 842 F.2d. at 495 (finding no property interest despite presence of statutory procedures).[7] The question here remains whether the Under

---

[7] The dissent cites two out-of-circuit cases, *Wheaton*, 931 F.2d 613, and *Ross v. Clayton Cnty*, 173 F.3d 1305 (11th Cir. 1999), to support its view that whether the legislature provides appellate rights for removals informs whether a substantive property interest has been created. *Wheaton* does not support the dissent's view. There, the employee at issue could not be removed unless "unable or unwilling to fully and faithfully perform the duties of the position satisfactorily." 931 F.2d at 616–17. The Ninth Circuit then referenced an appellate provision not for the simple fact of its existence, but because the appellate provision stated the removal should be overturned if it was not taken "in good faith for cause," thus reinforcing that the removal was *substantively* constrained. 931 F.2d at 617. *Ross*, on the other hand, does appear to suggest that the absence of an appellate mechanism militates against finding a property interest—in that respect, *Ross* reasoned incorrectly. 173 F.3d at 1308–09. It is worth noting, however, that Ross, unlike

Secretary's removal decision is substantively limited by the statute and regulations to a sufficient extent, not what procedural safeguards Congress chose to provide. For all the reasons given above, the answer to that question is yes.

**III**

Having determined that Esparraguera had a property interest in her career SES status, we next determine whether Esparraguera received constitutionally adequate process in her removal.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 570 U.S. at 542 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). To have proper notice and a meaningful opportunity to respond, an employee must at least "know the factual basis for the action." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

Esparraguera has adequately pleaded that she did not receive sufficient process. She alleges she was provided neither the evidence that formed the factual basis of her removal—including the OSC report cited as the reason for her removal—nor any opportunity to respond to that evidence prior to the Under Secretary's decision to remove her. Indeed, she alleges she was not even informed about the existence of the special PRB that recommended her removal until after it made its recommendation to the Under Secretary. According to her

Esparraguera, was a probationary employee, which factored heavily into the Eleventh Circuit's holding that he had no property interest. *See id*. at 1308, 1309 n.8.

allegations, the only opportunity she had to respond was at the informal MSPB hearing, which occurred over six months after her removal decision took effect.

The government notes that the extent of procedures the Due Process Clause requires varies with the magnitude of the private interest at stake and asserts that any private interest here was "relatively insubstantial" because Esparraguera was only demoted, rather than terminated entirely. Gov't Br. 42. But even accepting that characterization, insubstantial does not mean nonexistent. The government admits that SES status carries monetary advantages to which a property interest can attach insofar as there are differences in paid leave, future pay rates, and other benefits between a career SES and a non-SES position. *See* Gov't Br. 41; *see also, e.g.*, 5 U.S.C. §§ 3131(1), 3594(c)(2), 5376(b)(1)(A), 5382, 5384, 6304(f). Our cases are clear that, absent exigent circumstances not implicated here, the Due Process Clause "requires, at minimum, that the government provide notice and some kind of hearing *before* final deprivation of a property interest." *Propert v. D.C.*, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (emphasis added).

The only supposedly adequate process the government can point to is Esparraguera's June 2019 hearing at the MSPB. Again, however, that hearing took place almost six months *after* her removal from the SES took effect. That hearing was no substitute for the pre-deprivation process to which Esparraguera was constitutionally entitled.

Under our precedent and the complaint's allegations, due process entitled Esparraguera to at least notice and an opportunity to respond before her removal, and she received neither. The district court did not reach the question of what process Esparraguera was due because it dismissed the complaint based on its threshold determination that

Esparraguera lacked any property interest in her SES status. We leave to the district court on remand to determine whether greater procedures were required either before or after the deprivation, including whether adherence to the CSRA's existing procedural protections for removals under Section 3592(a)(2)—which allegedly were not followed here—would satisfy the Due Process Clause's guarantee. *See* 5 U.S.C. §§ 4312(b)(3), 4314(c)(2).

## IV

The district court's judgments are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge,* dissenting: Maria Esparraguera's appeal presents us with a novel constitutional question: Does a Senior Executive Service (SES) career appointee have a property interest in that position that entitles her to due process before she can be transferred to a non-SES civil service position? *See* 5 U.S.C. § 3592(a)(2). My colleagues conclude that she does. *See* Maj. Op. 5–6. Based on my review of the full SES legal framework and the factors enunciated in *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988), I would find no constitutional property interest in an SES career appointee's rank. Accordingly, I respectfully dissent.

## I. BACKGROUND

The Civil Service Reform Act of 1978 (CSRA) created several classifications of civil service employees. Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). The SES consists of employees "who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required." *United States v. Fausto*, 484 U.S. 439, 441 n.1 (1988). The SES offers salary and incentive benefits "designed to attract and retain highly competent senior executives." 5 U.S.C. § 3131(1). "[C]ompensation, retention, and tenure are contingent on executive success," based on both individual and organizational performance. *Id.* § 3131(2). And the CSRA enables "the head of an agency to reassign senior executives to best accomplish the agency's mission." *Id.* § 3131(5).

When first joining the SES, the senior executive[1] undergoes a "1-year probationary period." *Id.* § 3393(d).

---

[1] Different categories of senior executives comprise the SES. A senior executive who is a career appointee serves a potentially unlimited term. 5 U.S.C. § 3132(a)(4). Only a career appointee may

According to Section 3592(a)(1), a probationary senior executive "may be removed from the Senior Executive Service to a civil service position outside of the Senior Executive Service" for any reason. Following the probationary period, the career appointee is subject to removal—from the SES or from the civil service—in accordance with five CSRA provisions. *Id.* § 3393(g). As relevant here, she can be removed from the civil service entirely "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543; *see id.* § 7542.[2] The CSRA provides several procedural protections, including written notice, an opportunity to answer and eventual appeal to the Merit Systems Protection Board (MSPB or Board). *Id.* § 7543. The appointee can also be "removed from the Senior Executive Service" and placed into a non-SES civil service position pursuant to Section 3592(a)(2): "at any time for less than fully successful executive performance as determined under subchapter II of chapter 43 of this title." She can request an informal hearing before an official designated by the MSPB but cannot obtain MSPB review. *Id.* § 3592(a). The Under Secretary of the Department

---

serve in a "career reserved position." *Id.* § 3132(a)(8). Limited emergency appointees and limited appointees serve nonrenewable appointments up to 18 months and 3 years, respectively. *Id.* § 3132(a)(5), (6). A noncareer appointee is a senior executive falling under none of the other categories. *Id.* § 3132(a)(7).

   [2] Although the CSRA repeatedly uses "removal," the term has different meanings under different statutory provisions. Under Sections 7542–7543, removal means *termination* from the civil service entirely. If a senior executive is removed thereunder, she loses her employment. But removal pursuant to Section 3592(a)(2) is simply a *demotion*. A senior executive "removed" under this section loses her SES rank but maintains her civil service employment.

of the Army (Under Secretary) removed Esparraguera pursuant to this provision and placed her in a GS-15 position.

I agree with my colleagues on several points. First, a probationary SES appointee has no protection against removal under Section 3592(a)(1). *See Ashton v. Civiletti*, 613 F.2d 923, 929 (1979) (one-year probationary period indicates a probationary employee "could be fired without ceremony"); Maj. Op. 2. Second, noncareer and limited appointees "may be removed from the service at any time." 5 U.S.C. § 3592(c); Maj. Op. 12. Third, a career appointee can be removed—that is, terminated—from the civil service only for cause under Sections 7542–7543. *See* Maj. Op. 9 n.3. Our differences arise regarding the removal—that is, demotion—of a career appointee "at any time for less than fully successful performance as determined under subchapter II of chapter 43 of this title." 5 U.S.C. § 3592(a)(2).

## II. ANALYSIS

Esparraguera claims that the Due Process Clause protects her interest in SES rank so that she cannot be removed therefrom without notice and an opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Stated another way, she maintains that she has a "legitimate claim of entitlement" to her SES rank. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A claim of entitlement exists if "particularized standards or criteria guide the . . . decisionmakers." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (quotation omitted). In *Griffith*, we considered several factors to evaluate whether a legitimate claim of entitlement exists: (1) the vagueness of the controlling terms; (2) the vesting of decisionmaking authority in the agency head; (3) the nature of the claimed interest; and (4) the Congress' interest in flexibility. *Griffith*, 842 F.2d at 497–98. Applying

this analysis to Esparraguera's Section 3592(a)(2) demotion, I would find she has no legitimate claim of entitlement to her career senior executive appointment.

### A. Vagueness of Controlling Term and Nature of Esparraguera's Interest

Section 3592(a)(2) permits demotion "at any time for less than fully successful executive performance." The majority compares this language to standards in other cases where we found a legitimate claim of entitlement. Maj. Op. 7–8. But, as we noted in *Griffith*, those cases arose "[i]n the context of *dismissal*." 842 F.2d at 498 (emphasis in original) (citing *Johnson v. United States*, 628 F.2d 187, 192, 194 (D.C. Cir. 1980); *Ashton*, 613 F.2d at 929).[3] Esparraguera's claim is not based on a dismissal but rather a demotion to another civil service position with no diminution in pay. *See* 5 U.S.C. § 3594(c)(1)(B).

Although some courts have found a property interest in one's rank, they have relied on far more explicit language than that used in Section 3592(a)(2). For example, they have done so if a collective bargaining agreement permits demotion only

---

[3] *Griffith* considered a federal employee's alleged entitlement to a within-grade pay increase—essentially a promotion. 842 F.2d at 499. My colleagues believe the *Griffith* court distinguished "cases . . . finding property interests when *demotion* or removal was at issue." Maj. Op. 13 (emphasis added). *Griffith* undoubtedly distinguished promotion from termination but did not discuss any precedent dealing solely with demotion in one's rank. *See* 842 F.2d at 499–501. Why, my colleagues might ask, would I rely on a non-demotion case? I do so because regardless of the discrete entitlement pursued, *Griffith*'s multi-factor analysis sets out how the court should determine whether a legitimate claim of entitlement exists. 842 F.2d at 495, 497–98.

for "cause shown." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1255 (10th Cir. 1998); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 316, 318 (2d Cir. 2002) (finding a property interest where agreement permitted demotion only after "charges of incompetence and/or misconduct"). Others have found a property interest in rank if the governing statute imposes "for cause" protection. *See Sowers v. City of Fort Wayne*, 737 F.2d 622, 624–25 (7th Cir. 1984); *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1538 (6th Cir. 1994). In *Wheaton v. Webb-Petett*, 931 F.2d 613 (9th Cir. 1991), the Ninth Circuit found a property interest in rank after Oregon's Adult and Family Services Division demoted Wheaton from the management service and returned him to the classified service. *Id.* at 615–17. An Oregon statute guaranteed his management rank unless "the employee is unable or unwilling to fully and faithfully perform the duties of the position satisfactorily." *Id.* at 616–17. The court recognized that the employee had a right to appeal his demotion to an employee relations board, which could remedy the demotion only if the "action was not taken in *good faith for cause*." *Id.* at 617 (emphasis in original). Because the appellate board guaranteed that Wheaton could be demoted only "for cause," the Ninth Circuit found that he had a property interest in his management service rank. *Id.*

These demotion cases include explicit "for cause" protections, unlike Section 3592(a)'s "at any time for less than fully successful performance" standard. The *Griffith* court's consideration of the "acceptable level of competence" standard for a within-grade pay increase led it to conclude that the "vagueness of the criteria clearly militate[s] against the finding

of an entitlement." 842 F.2d at 498.[4] I would reach the same conclusion here.

### B. Decisionmaker's Discretion

As the majority notes, the CSRA and Army Regulations vest the demotion decision in a specific party: the Under Secretary. Maj. Op. 15; *see* 5 U.S.C. § 4314(c)(3) (final performance appraisal is placed in "appointing authority"); Army Reg. 690-920, 1-3. In *Griffith*, we stated that vesting discretion in a single authority often "compel[s] the conclusion that no property interest can be found." 842 F.2d at 498. A sole decisionmaker's discretionary decision "can rest on judgment about intangibles as much as on objectively verifiable facts." *Id.* at 497. A judgment based on intangibles, unlike a finding of objective fact, does not significantly "constrain the agency head's discretion." *Id.* And the Army Regulations explain that "appointing authorities have *substantial discretion* in determining which rating levels to recommend or approve."[5] Army Reg. 690-920, App. D-3 (emphasis added). They "will be required to *exercise judgment*" when assigning ratings

---

[4] *Griffith* noted that then-recently promulgated regulations tied within-grade pay increases to the existing agency performance appraisal system and "thus may place somewhat greater constraints on the agency head's discretion." 842 F.2d at 497 n.5. As discussed *infra*, I believe any constraint effected by the Army's performance appraisal system falls within the Under Secretary's exercise of his wide discretion.

[5] Each agency's SES performance appraisal system has a multi-level rating scale for annual evaluation. 5 U.S.C. § 4314(a). The Army has a five-level scale. Army Reg. 690-920, App. D-2. Rating Levels 1 and 2—Unsatisfactory and Minimally Satisfactory—constitute less than fully successful performance. *Id.* Rating Levels 3, 4 and 5—Fully Successful, Highly Successful and Exceptional—constitute fully successful performance. *Id.*

because the rating system does not cover every situation. *Id.* (emphasis added).

The majority finds the Under Secretary's discretionary authority sufficiently constrained by the Army's performance appraisal system to give rise to a property interest in Esparraguera's SES status. Maj. Op. 10–11, 15–16. I disagree. Vesting discretion in a specific decisionmaker indicates the position may be held "at will." *Griffith*, 842 F.2d at 498–99. In *Edwards v. Brown*, 699 F.2d 1073 (11th Cir. 1983), the Eleventh Circuit considered a city ordinance providing that police officers "serve during good behavior and efficient service, to be judged by the Commissioner or a designee." *Id.* at 1075. Although "good behavior and efficient service" indicated an officer could be discharged only for those reasons, making the Commissioner the sole decisionmaker indicated that "he was the person in whom was placed the power to determine whether the reasons [for termination] existed." *Id.* at 1077. Accordingly, the court held that police officers served "at the will" of the Commissioner. *Id.*

Decades ago, the MSPB recognized that a Section 3592(a)(2) removal did not deprive an SES career appointee "of a property right in continued employment with the right to notice and an opportunity for hearing." *Berger v. Dep't of Energy*, 36 M.S.P.R. 48, 52 (1987). "Congress has established the existing rules and understandings by the clear import of the statutes defining the appeal rights of SES members." *Id.* Although Sections 7542–7543 grant an SES career appointee who is *terminated* from the civil service the full panoply of appeal rights, the Congress extended no similar review mechanism to an SES career appointee demoted under Section 3592(a)(2). I believe the difference in statutory language reinforces the appointing authority's wide discretion to remove a career appointee under Section 3592(a)(2).

Other courts have viewed the inclusion of an appellate mechanism as a check on a decisionmaker's otherwise unbridled discretion. In *Ross v. Clayton County*, 173 F.3d 1305 (11th Cir. 1999), the County demoted Ross—a probationary correctional officer—to a lower-ranking position. *Id.* at 1306. Looking beyond Ross's "probationary" status, the court examined applicable Clayton County regulations. *Id.* at 1308.[6] The regulations provided that all employees "may be demoted only for cause" but only permanent, not probationary, employees had a right to appeal a demotion. *Id.* Because a probationary employee had no appeal right, "[f]inal discretion is thus vested in the appointing authority's unilateral determination of whether there was 'cause' for demoting the employee." *Id.*; *see also id.* at 1309 (describing warden's authority as "unchecked"). Ross thus "lacked a property interest in his rank." *Id.* at 1309. But the Ninth Circuit found a property interest in one's rank *because* all employees could appeal a disciplinary action—including a demotion—to an employee relations board that could uphold the action only if "taken in *good faith for cause*." *Wheaton*, 931 F.2d at 617 (emphasis in original).[7]

---

[6] My colleagues believe Ross' probationary status "factored heavily into the Eleventh Circuit's holding." Maj. Op. 18 n.7. But the *Ross* court looked beyond Ross' probationary status to consider applicable regulations. *Ross*, 173 F.3d at 1308. It also relied "on the non-appealability of the supervisor's decision" so it did not decide as a general matter if a probationary employee can have a property interest in rank while simultaneously lacking a property interest in employment. *Id.* at 1309 n.8.

[7] The majority claims *Wheaton* referenced the significance of appeal to the employee relations board simply because of its substantive "for cause" review of disciplinary actions. Maj. Op. 18 n.7. The Ninth Circuit did not make such a fine distinction. On my reading, the *Wheaton* court separately highlighted the substantive

I believe the MSPB got it right. Just like the probationary officer in *Ross*, an SES career appointee demoted to the civil service under Section 3592(a) by the Under Secretary is not entitled to due process notice and an opportunity to be heard. The demoted appointee *can* participate in an informal hearing conducted by an MSPB designee but cannot seek review by the Board itself. 5 U.S.C. § 3592(a); *Berger*, 36 M.S.P.R. at 51–52. The Army's performance appraisal system may limit the reasons the Under Secretary can use to demote a career senior executive but the Under Secretary ultimately has broad discretion "to determine *whether* the reasons exist[]." *Edwards*, 699 F.2d at 1077 (emphasis added). Despite Esparraguera's having repeatedly received a recommended rating of Level 5 ("Outstanding") from her first-line supervising official, the Under Secretary exercised his discretion to rate her at Level 1 ("Unsatisfactory"). His decision addressed intangibles because the "rating level definitions will not cover every situation in assigning a rating." Army Reg. 690-920, App. D-3; *see Griffith*, 842 F.2d at 497 (judgment resting on intangibles lies within the decisionmaker's discretion). He found Esparraguera's credibility "completely undermine[d]" and he "lost confidence in [Esparraguera's] ability to successfully perform [her] duties as an Army Executive." J.A. 41. Although the Under Secretary's discretion is tied to the performance appraisal system, he had the authority to weigh and determine—in his discretion—if Esparraguera in fact continued to meet SES career appointment performance. *See* Army Reg. 690-920, App. D.

The majority dismisses *Berger* and its analysis as applying the "bitter with the sweet" approach rejected in *Cleveland*

---

"for cause" standard and the constraining effect of the employee relations board's appellate review. 931 F.2d at 617; *see supra* Section II.A.

*Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). Maj. Op. 18–19. Never mind that *Berger* and *Wheaton* discuss *Loudermill* and *Ross* post-dates it. *Berger*, 36 M.S.P.R. at 53; *Wheaton*, 931 F.2d at 617. In *Loudermill*, the Board of Education argued that it followed state law procedures in firing Loudermill, claiming that "the property right is defined by, and conditioned on, the legislature's choice of procedures for its deprivation." 470 U.S. at 539. The Supreme Court rejected the argument. "While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguard." *Id.* at 541 (alteration in original) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)). But the MSPB in *Berger* and the *Ross* and *Wheaton* courts considered the decisionmaker's discretion at Step 1—whether a property interest exists in the first place. That is the issue before us. *Loudermill* simply accepted the existence of a property right (based on state law) but we—like *Berger*, *Ross* and *Wheaton*—are deciding the existence vel non of a property right. *See id.* at 538–39.

## C. Congressional Interest in Flexibility

Because the legislature creates a property interest, we must consider the Congress' intent. *See Loudermill*, 470 U.S. at 541; *Griffith*, 842 F.2d at 501. The CSRA legislative history evinces a plain desire for flexibility regarding the SES. One Senate Report criticized the previous executive system's rigidity and the difficulty "to reassign or remove executives whose performance is unacceptable." S. REP. NO. 95-969, at 10 (1978). Appointees under the new SES "will be subject to removal for inadequate performance, with a guaranteed right to a career position as at least a GS-15." *Id.* at 11. "[R]ank will be based on an executive's individual talents and performance."

*Id.* This "is the kind of system that has been highly successful in the *private sector*, as well." *Id.* (emphasis added). A later Senate Report described the SES as a "fluid, highly competitive group of executives who could receive substantial awards and bonuses for good performance while being *subject to legally unencumbered removal* for poor performance." S. REP. NO. 98-351, at 3 (1984) (emphasis added).[8] Section 3592(a)(2)'s vague standard regarding SES career appointees' status, combined with the appointing authority's broad discretion, indicate that the Congress unquestionably intended for flexibility of appointment to and from the SES rank.[9]

My colleagues read the legislative history as departing from the CSRA's declared purposes. Maj. Op. 14–15. I find the two complementary. The CSRA declares that the SES is "designed to attract and retain highly competent senior executives." 5 U.S.C. § 3131(1). But keeping highly competent senior executives also requires the flexibility to remove incompetent executives. *See* S. REP. NO. 95-969, at 11. The CSRA emphasizes that "compensation, retention, and tenure

---

[8] Although we ordinarily ignore subsequent legislative history, *see United States ex rel. Long v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 870, 878–79 (D.C. Cir. 1999), the 1984 Senate Report carries greater weight than usual. The CSRA required the Congress to review the SES after a five-year trial period. Pub. L. No. 95-454, § 415(b), 92 Stat. 1111, 1179. Accordingly, it reauthorized the SES in 1984 and made significant alterations. S. REP. NO. 98-351, at 3.

[9] *Griffith* used a similar analysis. The court found significant evidence of a Congressional interest in flexibility that argued against classifying a within-grade pay increase as an entitlement. 842 F.2d at 501. The "vague language and the specific vesting of the discretion in the employees' superior officials" indicated a lack of entitlement. *Id.* Legislative history compared the federal salary scale to private employment, suggesting "that equity is to be secured by a broad discretion rather than by bureaucratic rigidity." *Id.* at 497; *see also id.* at 501.

are contingent on executive success," based on factors including efficiency, productivity, quality of work and timeliness. 5 U.S.C. § 3131(2). Thus, senior executives who perform poorly are, as intended, "subject to legally unencumbered removals." S. REP. NO. 98-351, at 3. The majority concludes that demotion is encumbered by the Section 3131(2) factors and requires an "objective assessment of performance." Maj. Op. 15. But both the statute's express purpose and its legislative history manifest the Congress' intent to confer substantial benefits on SES appointees in exchange for the guarantee of the highest performance. Once performance slips, an occurrence only the appointing authority is authorized to assess, the Congress intended the SES career appointment to cease.

The Army undoubtedly provided Maria Esparraguera—a long-serving civil servant and eight-year member of the SES—with little process when it demoted her for "less than fully successful executive performance." 5 U.S.C. § 3592(a)(2). Nevertheless, weighing the weakness of Esparraguera's claimed property interest in her SES rank, the latitude of the performance appraisal system, the Under Secretary's discretion and the Congress' interest in flexibility, I would find that Esparraguera has no property interest in her SES status and would affirm the district court.

Accordingly, I respectfully dissent.